# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-0906

George R. Theiss, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued September 9, 2003                    Decided July 27, 2004    )

*James R. Mason, III*, with whom *Michael P. Farris* was on the brief, both of Purcellville, Virginia, for the appellant.

*Kathy A. Banfield*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Darryl A. Joe*, Acting Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KRAMER, *Chief Judge*, and STEINBERG and GREENE, *Judges*.

GREENE, *Judge*, filed the opinion of the Court.  KRAMER, *Chief Judge*, filed a concurring opinion.

GREENE, *Judge*:  Veteran George R. Theiss appeals, through counsel, an April 6, 2001, decision by the Board of Veterans' Appeals (Board) that determined that he was not entitled to additional non-service-connected pension benefits for dependents under section 1521(c) of title 38, U.S. Code, for his 18-year-old son, who was attending a State-of-Wisconsin-approved home school.  Record (R.) at 6.  The Board found that Mr. Theiss's son was not a "child" as defined by section 101(4)(A)(iii) of title 38, U.S. Code, and 38 C.F.R. § 3.57 (2000), on the basis that he was not attending an approved educational institution for VA purposes.  R. at 4-5.  Mr. Theiss argues that the statutory provisions (i.e., 38 U.S.C. §§ 101(4) and 104) in question are ambiguous; that any such interpretive doubt should be resolved in his favor, *see Brown v. Gardner*, 513 U.S. 115, 118 (1994); and that the Secretary's implementation of these statutory provisions

through his promulgation of 38 C.F.R. § 3.57(a)(1)(iii) (2001), a March 2000 regulatory amendment based on a March 1998 VA General Counsel precedent opinion (VA Gen. Coun. Prec. 3-98 (March 19, 1998) [hereinafter G.C. Prec. 3-98]), is erroneous and thwarts the legislative intent. Appellant's (App.) Brief (Br.) at 3. He contends also that 38 C.F.R. § 3.57 should be invalidated to the extent that it excludes home-schooled children from the definition of "child." Mr. Theiss seeks a reversal of the Board decision and an award of benefits. Reply Br. at 10. This appeal is timely, and the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266. For the following reasons, the Board decision will be vacated and the matter remanded for further adjudication.

## I. FACTS

The facts are not in dispute. Mr. Theiss served honorably in the U.S. Armed Forces on two occasions. From June 1967 to July 1969, he served in the U.S. Marine Corps, including service in Vietnam (R. at 10), and from December 1976 to December 1977, he served in the U.S. Army (R. at 9). In April 1993, a VA regional office (RO) awarded him non-service-connected VA pension benefits, effective December 1991. R. at 21. He also received additional pension benefits for his dependent children under 38 U.S.C. § 1521(c). R. at 35. In September 1999, Mr. Theiss filed a VA Form 21-674C, "Request for Approval of School Attendance" for his son, who would turn 18 years old on November 24, 1999; who, according to the request, was attending the "Theiss Christian Home School"; and who was expected to graduate on June 30, 2000. R. at 32. The RO denied Mr. Theiss additional benefits under section 1115 for his son beyond his son's 18th birthday in November 1999. R. at 35. The RO advised Mr. Theiss that G.C. Prec. 3-98 had determined that a person who is between 18 and 23 years of age and is enrolled in a home school is not a child because he was not pursuing a course of instruction at an "educational institution" for purposes of sections 101(4)(A)(iii) and 104(a) of title 38, U.S. Code. R. at 35. In March 2000, Mr. Theiss advised the RO that although his son no longer resided at home, Mr. Theiss wished to appeal the RO decision to the Board because his son had been a full-time home-schooled student from December 1, 1999, through February 29, 2000. R. at 74.

2

In the April 6, 2001, Board decision here on appeal, the Board, relying on G.C. Prec. 3-98, found that the Secretary specifically had *not* approved home schools as "educational institutions" for purposes of section 101(4)(A)(iii), and concluded, therefore, that Mr. Theiss's son was not a "child" as defined by that section and thus also was not a child for purposes of entitlement to additional pension benefits under 38 U.S.C. § 1521(c). R. at 5 (also concluding that "the provisions of 38 C.F.R. § 3.57(a)(1)(iii) specifically note that . . . the term 'educational institution' does not include home-school programs").

## II. APPLICABLE LAW

The pertinent law applicable to this matter provides:

### § 101. Definitions

. . . .

(4)(A) The term "child" means (except for purposes of chapter 19 of this title (other than with respect to a child who is an insurable dependent under section 1965(10)(B) of such chapter) and section 8502(b) of this title) a person who is unmarried and –

    (i)    who is under the age of eighteen years;

    (ii)  who, before attaining the age of eighteen years, became permanently incapable of self-support; or

    *(iii)  who, after attaining the age of eighteen years and until completion of education or training (but not after attaining the age of twenty-three years), is pursuing a course of instruction at an approved educational institution*[.]

### § 104. Approval of educational institutions

(a) For the purpose of determining whether or not benefits are payable under this title (except chapter 35 of this title) *for a child over the age of eighteen years and under the age of twenty-three years who is attending a school, college, academy, seminary, technical institute, university, or other educational institution, the Secretary may approve or disapprove such educational institutions.*

(b) The Secretary may not approve an educational institution under this section unless such institution has agreed to report to the Secretary the termination of attendance of any child. If any educational institution fails to report any such termination promptly, the approval of the Secretary shall be withdrawn.

### § 1521. Veterans of a period of war

3

. . . .

(c) If the veteran is married and living with or reasonably contributing to the support of such veteran's spouse, or *if there is a child of the veteran in the custody of the veteran or to whose support the veteran is reasonably contributing*, pension shall be paid to the veteran at the annual rate of $4,651 . . . . If the veteran has two or more such family members, such annual rate shall be increased by $600 for each such family member in excess of one.

38 U.S.C. §§ 101(4)(A)(iii), 104, 1521(c) (emphasis added in all three provisions).

The primary VA regulation implementing section 104 provided in pertinent part (the current version is unchanged from the regulation applicable at the time of the Board decision):

**§ 3.57  Child.**

(a) *General*. (1) Except as provided in paragraphs (a)(2) and (3) of this section [(which provisions are not relevant here)], the term *child* of the veteran means [someone meeting criteria that are not disputed here]; and

(i)  Who is under the age of 18 years; or

(ii)  Who, before reaching the age of 18 years, became permanently incapable of self-support; or

(iii)  *Who, after reaching the age of 18 years and until completion of education or training (but not after reaching the age of 23 years) is pursuing a course of instruction at an approved educational institution.* For the purposes of this section and § 3.667, the term "educational institution" means a permanent organization that offers courses of instruction to a group of students who meet its enrollment criteria. The term includes schools, colleges, academies, seminaries, technical institutes, and universities, *but does not include home-school programs*.

38 C.F.R. §§ 3.57(a) (2003) (emphasis added).

## III.  ANALYSIS
### A.  G.C. Prec. 3-98

In this case, the Board, relying on § 3.57(a)(1)(iii) and G.C. Prec. 3-98, determined that Mr. Theiss's 18-year-old son was not a "child" on the basis that by attending home school he

was not in pursuit of a course of instruction at an "approved educational institution" for purposes of section 101(4)(A)(iii). R. at 5. The Court observes that, according to the VA regulatory history, § 3.57(a)(1)(iii) was promulgated to implement G.C. Prec. 3-98. *See* 65 Fed. Reg. 12,116, 12,116 (March 8, 2000) (amending 38 C.F.R. § 3.57(a)(1)(iii) to accord with conclusions in G.C. Prec. 3-98). Under 38 U.S.C. § 7104(c), the precedent opinions of the VA General Counsel are binding on the Board. 38 U.S.C. § 7104(c); *see Cycholl v. Principi*, 15 Vet.App. 355, 360 (2000) (citing *Herlehy v. Principi*, 15 Vet.App. 33, 34 (2001) (per curiam order)); *see also* 38 C.F.R. § 20.901(c) (2003). Therefore, the Board was required to follow the VA General Counsel precedent opinion in this case.

That General Counsel opinion reached its conclusion by interpreting language from 38 U.S.C. §§ 101(4)(A)(iii) and 104. In order to review the Board decision here on appeal, then, the Court must first examine the Secretary's interpretation of these statutory provisions. "'The starting point in interpreting a statute is its language.'" *Lee (Raymond) v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)).

> The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 . . . (1994); *Fagan[ v. West]*, 13 Vet.App. [48,] 52 [(1999)]; *Curtis[ v. West]*, 11 Vet.App. [129,] 133 [(1998)]. "If the intent of Congress is clear, that is the end of the matter". *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 . . . (1984)), *aff'ing* 4 Vet.App. 141 (1993) (mem.).

*Lee, supra.* If, as here, the statute fails to define an operative term, that may leave a "gap" in the statute, and the Secretary may undertake to fill that gap, but may not add requirements or limitations to those set forth in the statute. *See Ozer v. Principi*, 14 Vet.App. 257, 264 (2001); *Davenport v. Brown*, 7 Vet.App. 476, 482 (1995). Here, the Secretary has attempted to fill that gap through the General Counsel opinion and through the subsequent amendment to § 3.47(a)(1)(iii). *See* 65 Fed. Reg. at 12,116.

In the precedent opinion, the General Counsel addressed the question "[w]hether a person who is between 18 and 23 years of age and is pursuing a high school education in a home-school program is pursuing a course of instruction at an educational institution for purposes of 38 U.S.C. § 101(4)(A)(iii)." G.C. Prec. 3-98, at 1. The General Counsel's opinion

answered that question by concluding that a home-school program did not fit within the statutory scheme of section 101(4)(A)(iii) because "the program terminates when the child completes his or her course of instruction or withdraws, does not have an ongoing enrollment, and is operated for the sole purpose of serving the needs of a particular student." *Id.* at 3. In reaching this conclusion, the General Counsel expressly relied upon the definition of "institution" in *Webster's Ninth New Collegiate Dictionary* [hereinafter *Webster's*] (defining "institution" as an "established organization or corporation (as a college or university) esp[ecially] of a public character"), and gave *Webster's* meaning of that term to the term "educational institution" in 38 U.S.C. § 101(4)(A)(iii). *Id.* at 2. Further, placing special emphasis on the term "established organization," the General Counsel then opined that "[t]he word 'established' implies a degree of permanency," and the word "organization" involves a group of people with more or less constant membership. *Id.* (citing BLACK'S LAW DICTIONARY [hereinafter BLACK'S] 546 (6th ed. 1990) and WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1590 (1976) [hereinafter WEBSTER'S], respectively). Applying that definition, the General Counsel determined that a home-school program did not meet the definition in section 101(4)(A)(iii) of "educational institution" because it is operated for the sole purpose of serving the needs of one particular student, and terminated when that individual ceases his or her studies. *Id.*

Next, the General Counsel applied the statutory construction rule of ejusdem generis to an interpretation of the term "educational institution" in sections 104(a) and (b). *Id.* at 2-3; *see* BLACK'S at 535 (defining "ejusdem generis" as "[a] canon of construction that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed"); 2A SUTHERLAND'S STATUTORY CONSTRUCTION § 47.17 ("Where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."). The General Counsel stated that the institutions listed in section 104(a) before the phrase "other educational institution" (that is, school, college, academy, seminary, technical institute, and university) differ from a home-school program because a home-school program is not a permanent organization, and is not offered to more than one student, but rather is created to serve the needs of a particular student. G.C. Prec. 3-98 at 3.

6

Initially, we observe that the General Counsel's reasons for rejecting a home-school program as an educational institution are not as persuasive as the Board and the Secretary seem to believe. Including home schools in the definition of an educational institution was rejected by the General Counsel on two grounds: (1) "[T]he [home-school] program terminates when the child completes his or her course of instruction or withdraws [and] does not have an ongoing enrollment" and (2) a home-school program "is operated for the sole purpose of serving the needs of a particular student." *Id.* However, as noted in the Board decision in this case: "The veteran notes that *all* of his children attend the program and that his program has been approved by the state of Wisconsin for over 12 years." R. at 5 (emphasis added). Thus, Mr. Theiss's program did, in fact, have an ongoing enrollment and was *not* operated for the sole purpose of serving the needs of one particular student, but rather served the needs of all his children. The General Counsel assumed that a home-school program existed to serve the needs of one child, and based its analysis on this point. However, as the facts in this case demonstrate, such an assumption is not always accurate.

Unlike the Board, this Court is not bound by VA General Counsel precedent opinions. *See* 38 U.S.C. § 7261. However, because G.C. Prec. 3-98 was applied in this case, and formed the principal basis for the Board decision under review, as well as the basis for the March 2000 regulation revision, we must examine the reasoning in that opinion.

*1. Dictionary definitions:* Interestingly, the General Counsel opinion chose to rely on Webster's dictionary definition of "institution" to interpret the meaning of "educational institution" in section 101(4)(A)(iii). In both *Black's Law Dictionary* and *Ballentine's Law Dictionary*, however, there is, in addition to a definition of "institution," a specific, *separate*, definition for the term "educational institution." BLACK'S at 532 (7th ed. 1999); BALLENTINE'S LAW DICTIONARY at 390 (3rd ed. 1969) [hereinafter BALLENTINE'S]. The General Counsel provides no rationale for selecting the definition of part of an operative term rather than the precise definition of the full term, offered in a standard legal dictionary, and was mistaken in not giving the definition of the operative phrase precedence over the definition of one portion of the operative phrase. *Cf. Sullivan v. Stroop*, 496 U.S. 478, 482-83 (1990) ("where a phrase in a statute appears to have become a term of art, . . . any attempt to break down the term into its constituent words is not apt to illuminate its meaning").

In pertinent part, *Black's* defines "educational institution" as "[a] school, seminary, college, university, or other educational facility." BLACK'S at 532 (7th ed. 1999). Using the same methodology that the Secretary employed in the General Counsel opinion, we observe that *Black's* does not define the term "facility"; thus, we turn to alternative sources and observe that it is defined in *Webster's* (the same dictionary used by the Secretary), in pertinent part, as "a building, special room, etc. that facilitates or makes possible some activity." WEBSTER'S at 485. Using the same analytical model that the Secretary relies upon but applying a more precise definition of "educational institution," Mr. Theiss's home-schooling program could be an educational institution.

Similarly, *Ballentine's* defines "educational institution" as "[a]n institution for the teaching and improvement of its students or pupils; a school, seminary, college, or university. . . . Art galleries, museums, public libraries, even labor union buildings have at times been held to be educational institutions." BALLENTINE'S at 390. *Ballentine's* then defines "institution" as, in pertinent part, "[s]omething that has been established, particularly a place where an educational or charitable enterprise is conducted." BALLENTINE'S at 640. This definition (again using the Secretary's methodology) is similar to the *Black's/Webster's* definition, i.e., a place for teaching. Again, both definitions could encompass home schooling.

Even if we were to follow the General Counsel's narrow choice in defining only the word "institution," his argument that home schooling cannot be considered an educational institution will not pass muster. *The Random House Dictionary of the English Language* defines "institution" in part as an "establishment . . . devoted to the promotion of a particular object," and defines "establishment" in pertinent part as "a household." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE at 737 (1967). Thus, if it can be said that Mr. Theiss's "household" is devoted to the promotion of a particular religious-based education, it fits within this definition of "institution." Further, *The American Heritage Dictionary of the English Language* defines "institution" in part as "[a]n established organization or foundation," and then defines "organization" in part as "[a] group of persons organized for a particular purpose." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE at 936, 1275 (3rd Edition). Obviously, in this case, the Theiss family could be a "group" of persons organized for the education of Mr. Theiss's children, thus meeting this definition of "institution."

8

Our criticism of the Secretary and General Counsel's reasoning in the above discussion is not an attempt to establish here a definition for "educational institution." Rather, we emphasize the problems presented by the General Counsel's method of defining the term (1) because the Board relied on that General Counsel precedential opinion as a principal basis for its decision and (2) in order to illustrate the varied meanings that can be given to "educational institution" and to show that many of these meanings *support* rather than reject the inclusion of home-school programs within a definition of "educational institution" in section 101 of title 38. The selective use of a narrow set of definitions, and the selective use of terms from those definitions, cannot, without more, stand as a basis for excluding a class of persons from the definition of this statutory term. Giving determinative weight to one dictionary's definition of a term, when other dictionaries define the term in a quite different manner, may very well "exceed the bounds of the permissible." *Chevron*, 467 U.S. at 842.

We note that here on appeal the Secretary defends the General Counsel opinion's selective use of dictionary definitions by noting that *Gardner* prohibits a "dueling dictionary definition" argument. Secretary's (Sec'y) Br. at 12 (citing *Gardner*, 513 U.S. at 118). He makes this argument, however, while also arguing that *his* dictionary definition should prevail. *Id.* at 12-13. The argument is contradictory and irrelevant. As stated earlier, the other available dictionary definitions offered here are *not* an attempt to define the term, but are offered merely to demonstrate that the General Counsel's efforts may very well have exceeded the bounds of the permissible. We reject the Secretary's attempt to use *Gardner* to shield the faulty reasoning of his General Counsel's opinion.

*2. Ejusdem generis*: Relying on the rule of ejusdem generis to support a conclusion that a home school is not an "educational institution," the General Counsel opined that home schooling, unlike the other "educational institutions" specifically enumerated in section 104(a), is not offered to "other students" and is not a "permanent organization." We reject the General Counsel's reliance on that rule. As with his use of dictionary definitions, the Secretary has here focused *solely* on the characteristics that differentiate a home-school program from the specifically enumerated educational institutions. There will, of course, be some measure of differences between the items in a list of specifically enumerated items, but the General Counsel ignores that home schooling has many things in *common* with all those enumerated programs: They are

9

all educational programs; they all have instructors and instructional material; they all involve some form of accreditation, etc. *See, e.g.,* Wisc. Stat. Ann. § 118.15(4). To argue that the doctrine of ejusdem generis is applied properly in this context, the Secretary would have to demonstrate that the educational programs listed in the statute share a commonality that is *essential* to their characters, and that home schooling lacks this essential component. This General Counsel opinion failed to do so; indeed, the General Counsel has not enumerated any such commonality (focusing instead on those areas where home schooling differs), and has therefore failed to demonstrate that home schooling lacks this essential commonality with the specifically enumerated programs. Thus, the ejusdem generis argument in the General Counsel opinion, and, in turn, in the Board decision under review (which was bound by this opinion, *see* 38 U.S.C. § 7104(c); 38 C.F.R. § 19.5 (2000)), is legally unsupportable.

Against this background, the Secretary carries a heavy burden to demonstrate that the interpretation given to "educational institution" is reasonable. Here, however, there is no explanation in the General Counsel opinion for rejecting other dictionary definitions, i.e., those that favor including home schooling within the definition of "educational institution," and basing its conclusion on only those definitions that it has selected. Without a rational, comprehensive explanation, the General Counsel opinion provides an invalid basis for the Board's decision. Thus, the Board's statement of reasons or bases in relying on that opinion, as the Board was bound to provide, is inadequate. *See* 38 U.S.C. § 7104(d)(1). Moreover, for the reasons set forth in part III.B. below, in support of the Court's conclusion that regulation § 3.57(a)(1)(iii) is a substantive, legislative rule and that that regulation was not adopted in accordance with the notice-and-public-comment requirements of the Administrative Procedure Act, 5 U.S.C. §§ 552(a)(1), 553, the Court concludes that the General Counsel opinion also constituted a substantive rule that was not adopted pursuant to those notice and comment procedures and is thus invalid. *See Splane v. West*, 216 F.3d 1058, 1062-64 (Fed. Cir. 2000).

## B. 38 C.F.R. § 3.57(a)(1)(iii)

Finally, the Board decision also relied on the language in VA regulation 38 C.F.R. § 3.57(a)(1)(iii) to deny Mr. Theiss additional pension benefits. As indicated above, § 3.57(a)(1)(iii) was amended in March 2000 "to bring the regulations into conformance with the governing statutes as interpreted by VA's General Counsel" by specifically excluding home-

10

school programs from the definition of an approved "educational institution."  65 Fed. Reg. at 12,116 (summary identifying VA Gen. Coun. Prec. 03-98).  The Supplementary Information to this amendment also explained:  "This final rule interprets statutory provisions and makes non-substantive changes.  Accordingly, there is a basis under 5 U.S.C. [§] 553 to dispense with prior notice and comment and a delayed effective date."  65 Fed. Reg. at 12,116.

In examining the General Counsel opinion itself, the Court notes that that opinion, referring to paragraph 14.06 of part IV of the Veterans Benefits Administration Adjudication Procedure Manual M21-1 [hereinafter Manual M21-1], stated that a lack of accreditation of a school was a valid basis for VA to disapprove that school as an "educational institution."  G.C. Prec. 3-98 at 3.  The opinion concluded:  "We believe that these provisions in [Manual] M21-1 represent a substantive rule because they establish criteria for entitlement to compensation."  *Id.* at 4.  The opinion concluded further that section 104(a), which gives the Secretary authority to "approve or disapprove such educational institutions," would provide a legal basis for this substantive rule.  *Id.* at 4-5.  The opinion recommended that, in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 552(a)(1) and 553, and 38 U.S.C. § 501, VA should promulgate a regulation that would specify the criteria for an educational institution that would satisfy the requirements of sections 101(4)(A)(iii) and 104(a).  *Id.* at 5.  The regulation adopted by the Secretary, however, did not use accreditation as a basis to approve or disapprove a school and did not set forth explicit criteria for an "educational institution" that would satisfy sections 101 and 104.  *See* 65 Fed. Reg. at 12,116.

The General Counsel was correct in stating that a rule that "establish[es] criteria for entitlement to compensation," as does the rule in § 3.57(a)(1)(iii), would represent a *substantive* rule.  When published, however, the amendment claimed to be nonsubstantive in nature, even though it established a criterion for entitlement to compensation – it excluded home-school programs from the definition of "educational institution."  (We note that the failure of the amendment to adopt all the suggestions in the General Counsel opinion does not alter this analysis, because the amendment *did* establish criteria for entitlement to compensation.)  Furthermore, by otherwise relying on the General Counsel's definition of "educational institution," the amendment erected several de facto criteria for entitlement to compensation, e.g., permanence of the institution, existing to serve the needs of more than one child, etc.

11

Because the amendment established criteria for entitlement to benefits, we hold that the March 2000 amendment to 38 C.F.R. § 3.57(a)(1)(iii) was, as a matter of law, a *substantive* change in the law.

Under section 553 of title 5, U.S. Code, substantive changes made by administrative agencies in regulations are required to comply with certain "notice and comment" requirements. 5 U.S.C. § 553(b), (c). These requirements include publication of a notice of proposed rulemaking in the Federal Register; an opportunity for interested persons to comment on that notice; and, after consideration of these comments, publication of the final rule with a general statement of its basis and purpose. *Id.* When the Secretary promulgated the amendment to 38 C.F.R. § 3.57(a)(1)(iii), he announced that that amendment "interpret[ed] statutory provisions and ma[de] non-substantive changes." 65 Fed. Reg. at 12,116. If the changes were nonsubstantive, VA would be exempt from the notice-and-comment rulemaking procedure, under the exemption for interpretative rules. *See* 5 U.S.C. § 553(A) (except when notice or hearing is required by statute, section 553(b) does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice"). We note that, even if the Secretary's characterization of the amendment as nonsubstantive were accurate, because the amendment was not subjected to notice-and-comment rulemaking procedures, it would be entitled to deference only in proportion to its "power to persuade," and would not be given the substantial deference afforded to rules promulgated according to the notice-and-comment procedures. *See United States v. Mead Corp.*, 533 U.S. 218, 231-36 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

In determining whether an agency rule is interpretive or substantive for purpose of the notice-and-comment requirements, the Court need not accept VA's characterization of the action. *See Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003) (court not constrained to accept agency's characterization of action). Indeed, the interpretive-rule exception to the notice-and-comment rulemaking requirement is narrowly construed. *See Reno-Sparks Indian Colony v. U.S. EPA*, 336 F.3d 899, 909 (9th Cir. 2003). Further, as the United States Court of Appeals for the Fifth Circuit has stated, legislative (or substantive) rules grant rights, impose obligations, and narrowly constrict the discretion of agency officials by largely determining the issue addressed, whereas interpretative rules express the agency's intended

course of action or its tentative view of the meaning of a particular statutory term, and do not foreclose alternative courses of action or conclusively affect rights of private parties. *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 908-09 (5th Cir. 1983); *see also Paralyzed Veterans of America v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998) ("interpretative rules" are those that clarify or explain existing law or regulation); *Air India v. Brien*, 261 F. Supp. 2d 134, 141 (E.D.N.Y. 2003) ("legislative rules" create new law, rights, or duties, in what amounts to legislative act; "interpretive rules" do not create rights, but merely clarify an existing statute or regulation). Here, although the Secretary announced that the amendment was a nonsubstantive rule, the amendment in fact and law had the effect of "narrowly constrict[ing] the discretion of agency officials by . . . determining the issue addressed." *Avoyelles Sportsmen's League*, 715 F.2d at 908-09. By determining conclusively that home-school programs do not meet the statutory definition of "educational institution," the amendment to § 3.57(a)(1)(iii) foreclosed *all* discretion of agency officials when deciding whether to approve an educational institution. Construing, as we must, the interpretative-rule exception narrowly, the Court holds that this amendment extended beyond merely clarifying or explaining the existing law; instead, it made *new* substantive law, by excluding home-school programs wholesale from classification as part of the category "educational institution." As such, because the amendment "affect[ed] individual rights and obligations," it is a substantive, legislative rule. *Paralyzed Veterans of Amer. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998).

Therefore, we hold that the amendment to § 3.57(a)(1)(iii) is invalid for failure to comply with the notice-and-comment rulemaking procedures that 5 U.S.C. § 553 requires of such substantive rule changes. Because the Board relied in part on the amended regulation (38 C.F.R. § 3.57(a)(1)(iii)), the Board decision on review is erroneous. If the Secretary, on remand, seeks to promulgate an amendment to the regulation, the amendment must comply with the notice-and-comment rulemaking procedures, as well as with the provisions of the Regulatory Flexibility Act, 5 U.S.C. §§ 603-604. (We note in this regard that an attempt to satisfy this Act with a bare certification, such as was presented in the regulatory amendment in this case, would likely fail to satisfy that Act because such a certification must be accompanied by "a statement providing the factual basis for such certification." *Carpenter v. Sec'y of Veterans*

13

*Affairs*, 343 F.3d 1347, 1356 (Fed. Cir. 2003) (quoting 5 U.S.C. § 605(b)). The certification accompanying this regulatory amendment contained no such statement.)

## IV. CONCLUSION

Upon consideration of the foregoing analysis, the ROA, and the parties' pleadings, the Court holds that, for the reasons stated above, the Board committed prejudicial error. Therefore, the Court vacates the April 6, 2001, Board decision and remands the matter to the Board for expeditious readjudication consistent with this opinion. *See* 38 U.S.C. § 7112.

VACATED AND REMANDED.

KRAMER, *Chief Judge,* concurring: I agree that vacatur of the April 2001 Board of Veterans' Appeals (Board) decision and remand of the matter are appropriate and do so on the ground that the Board decision was based upon two VA issuances, VA Gen. Coun. Prec. 3-98 (Mar. 19, 1998) [hereinafter G.C. Prec. 3-98] and 38 C.F.R. § 3.57(a)(1)(iii) (2003) (defining child), which did not comply with the notice and rulemaking procedures of the Administrative Procedures Act (APA), *see* 5 U.S.C. § 553, and thus are invalid. *See Splane v. West*, 216 F.3d 1058, 1062-64 (Fed. Cir. 2000); *Fugere v. Derwinski*, 1 Vet.App. 103, 110 (1990) (invalidating VA's rescission of VA issuance without reaching issue of Secretary's authority to act).

"VA is required under 5 U.S.C. § 552(a)(1) to 'state and currently publish in the Federal Register,' among other things, 'rules of procedure, . . . substantive rules of general applicability adopted as authorized by law, . . . [and] each amendment, revision, or repeal of the foregoing.'" *Disabled Amer. Veterans v. Gober*, 234 F.3d 682, 688 (Fed. Cir. 2000) (quoting 5 U.S.C. § 552(a)(1)(C)-(E)); *see Paralyzed Veterans of Amer. (PVA) v. West*, 138 F.3d 1434, 1435 (Fed. Cir. 1998). Substantive, or legislative, rules are "those that effect a change in existing law or policy or which affect individual rights and obligations." *PVA*, 138 F.3d at 1436. Section 553 of title 5, U.S. Code, provides procedures for notice and rulemaking with which VA is required to comply. *See* 5 U.S.C. § 553(b)-(e); *PVA*, *supra.*

In G.C. Prec. 3-98, the General Counsel excludes home schools from the definition of "educational institution," 38 U.S.C. § 101(4)(A)(iii), which exclusion renders claimants with

home-schooled children, between 18 and 23 years old, ineligible to receive benefits for those children pursuant to 38 U.S.C. § 1521(c) or 38 U.S.C. § 1115. Thus, because VA, in G.C. Prec. 3-98, has so limited eligibility for VA benefits, VA "effect[ed] a change in existing law or policy or [VA] . . . affect[ed] individual rights and obligations." *PVA*, 138 F.3d at 1436. Further, the General Counsel, in his opinion, appears to concede that provisions related to the approval of educational institutions may be legislative because "they establish criteria for entitlement to compensation." G.C. Prec. 3-98 at 3-4. However, VA did not publish the entire text of G.C. Prec. 3-98 in the Federal Register. *See* 5 U.S.C. § 552(a)(1). Thus, I believe that G.C. Prec. 3-98 is legislative in nature and, because VA failed to follow the APA's notice and rulemaking procedures, it is invalid. *See* 5 U.S.C. § 553; *Splane*, *supra*; *Fugere,* 1 Vet.App. at 109-11.

Similarly, VA revised 38 C.F.R. § 3.57(a)(1)(iii) based on G.C. Prec. 3-98 and published that revision only as a final rule in the Federal Register. *See* 65 Fed. Reg. 12,116 (Mar. 8, 2000). That regulation defines the term "child," inter alia, as a person "[w]ho, after reaching the age of 18 years and until completion of education or training . . . is pursuing a course of instruction at an approved educational institution." 38 C.F.R. § 3.57(a)(1)(iii). That revised regulation further provides that "the term educational institution . . . . does not include home-school programs." *Id*. The effect of this revision also is to limit claimants' eligibility to receive benefits for this group of home-schooled children. Thus, because this promulgation excludes certain home-schooled children from the definition of child, it "affect[ed] individual rights and obligations," *PVA,* 138 F.3d at 1436, and, as the majority holds, it too is legislative. *See ante* at 14. However, in revising § 3.57(a)(1)(iii), VA "dispense[d] with prior notice and comment." 65 Fed. Reg. at 12,116. Hence, because VA did not follow the notice and rulemaking procedures, I agree with the majority that this promulgation is invalid. *See* 5 U.S.C. § 553; *Fugere, supra*.

Thus, because the analysis in the April 2001 Board decision rests upon these two invalid issuances, the decision must be vacated and the matter remanded. *See Best v. Principi,* 15 Vet.App. 18, 19 (2001) (per curiam order) ("[I]t has been the practice of this Court that[,] when a remand is ordered because of an undoubted error that requires such a remedy, the Court will not, as a general rule, address other putative errors raised by the appellant." (citing *Dunn v. West*, 11 Vet.App. 462, 467 (1998))); *Fugere, supra*.