**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 05-1195

Joseph Martinak, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued June 14, 2007                    Decided   August 23, 2007  )

*Landon E. Overby*, of Washington, D.C., for the appellant.

*Kenneth A. Walsh*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and LANCE, *Judges*.

LANCE, *Judge*: The appellant, Joseph Martinak, appeals a January 7, 2005, Board of Veterans' Appeals (Board) decision. Record (R.) at 1-25. In that decision, the Board denied an initial disability rating higher than 10% for the appellant's service-connected bilateral tinnitus. The Board also denied a compensable disability rating for the appellant's service-connected chronic obstructive pulmonary disorder (COPD) and bilateral hearing loss. The appellant has withdrawn his appeal of his bilateral tinnitus claim in light of *Smith v. Nicholson*, 451 F.3d 1344 (Fed. Cir. 2006). The Court will, therefore, not consider that claim on appeal. Furthermore, the Secretary has conceded that the appellant is entitled to a higher initial disability rating for his COPD. Secretary's Brief (Br.) at 2. Accordingly, the Court will remand that claim to the Board for further adjudication.

The only remaining issue before the Court is the propriety of the Board's adjudication of the appellant's bilateral-hearing-loss claim. The first question presented is whether the Secretary's policy of conducting all audiometry testing of hearing-loss claimants in a sound-controlled room is

valid. The second question presented is whether the appellant's VA audiological examination fully describes the functional effects that his hearing disability has under the ordinary conditions of daily life. For the reasons stated herein, we hold that the Secretary's policy for conducting audiological examinations in a sound-controlled room is valid. We further hold that the appellant's VA audiological examination was adequate. Accordingly, we will affirm the Board's decision with respect to his bilateral-hearing-loss claim.

## I. FACTS

The appellant served in the U.S. Marine Corps from April 1985 until June 2001. R. at 27. In August 2001, he filed a claim with the Pittsburgh, Pennsylvania, VA regional office (RO) requesting service connection for several conditions, including bilateral hearing loss. R. at 277-90. In November 2001, the appellant received a VA audiological examination. *Id.* at 351-53. In accordance with the governing VA regulation, the appellant's audiological examination consisted of a pure tone audiometry test and a speech recognition test. *Id.* This test was performed in a sound-controlled room. *Id.* During the examination, the audiologist also elicited information from the appellant regarding his medical history. *Id.* at 351. Among other things, the audiologist noted that the appellant's bilateral hearing loss and tinnitus were the result of acoustic trauma he experienced during an in-service mortar explosion. The audiologist also noted that the appellant's bilateral hearing loss and tinnitus "[a]ffects [his] ability to sleep." *Id.*

In February 2002, the RO granted the appellant service connection for bilateral hearing loss and assigned a noncompensable rating. R. at 375-85. The appellant appealed this decision to the Board. R. at 399, 478-94, 496. In January 2005, the Board issued the decision here on appeal. R. at 1-25. The Board reviewed the November 2001 VA audiological examination and determined that the appellant was not entitled to a compensable rating for his bilateral hearing loss. R. at 11-13. The Board further found that a referral for an extraschedular rating was not warranted. R. at 13-14.

## II. ANALYSIS

The appellant argues that the Secretary's policy of conducting audiometry testing in a sound-controlled room is a plainly erroneous interpretation of, or is otherwise inconsistent with, VA's regulations on medical examinations. Appellant's Br. at 22-23 (citing 38 C.F.R. §§ 4.1, 4.2, 4.10

2

(2006)); *see also* 38 C.F.R. § 4.85(a) (2006). He further argues that his audiological examination does not include a full description of the functional effects his disability has under the ordinary conditions of daily life. Br. at 22-23, 27-29 (citing 38 C.F.R. §§ 4.1, 4.10). Therefore, he contends, the Board could not properly determine whether a referral for an extraschedular rating was warranted. *Id.* (citing 38 C.F.R. § 3.321(b) (2006)). The Secretary argues that the prohibition on judicial review of the rating schedule precludes this Court from deciding the issue the appellant has raised on appeal. Secretary's Br. at 20 (citing *Wanner v. Principi*, 370 F.3d 1124, 1130-31 (Fed. Cir. 2004); *Byrd v. Nicholson*, 19 Vet.App. 388, 391 (2005)). The Secretary further argues that the appellant has not introduced any competent medical or scientific evidence demonstrating that his policy of conducting audiometry testing in a sound-controlled room is improper. Secretary's Br. at 20. Finally, the Secretary argues that a description of the functional effects of the appellant's disability is not necessary because the hearing-loss rating schedule relies exclusively on objective test results that otherwise sufficiently account for the functional loss caused by a hearing disability. Secretary's Br. at 19-20.

## A. Jurisdiction

"'On every writ of error or appeal, the first and fundamental question is that of jurisdiction . . . .'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)). Our jurisdiction, like that of any other lower federal court, is determined solely by Congress. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). It cannot be expanded beyond that conferred by statute or permitted by law. *Id.* Moreover, Congress has expressly prohibited our review of any "action relating to the adoption or revision of the schedule of ratings for disabilities." 38 U.S.C. §§ 502, 7252; *see Wanner*, 370 F.3d at 1130 (explaining that this prohibition reflects an "'apprehension'" on the part of Congress "'that the VA schedule for rating disabilities . . . would be destroyed by piecemeal review of individual rating classifications'" (quoting H.R. REP. NO. 100-963, at 28 (1988))). The Secretary argues that this prohibition deprives this Court of the power to decide the questions presented here. We disagree.

The Secretary's authority to prescribe the rating schedule is contained in 38 U.S.C. § 1155. This statute provides, in relevant part:

The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. The schedule shall be constructed so as to provide ten grades of disability and no more, upon which payments of compensation shall be based, namely, 10 percent, 20 percent, 30 percent, 40 percent, 50 percent, 60 percent, 70 percent, 80 percent, 90 percent, and total, 100 percent.

38 U.S.C. § 1155. The Secretary has established the rating schedule in a series of regulations located in part 4 of title 38 of the Code of Federal Regulations. Among other things, these regulations list the diseases and injuries which correspond to a particular diagnostic code number, the related symptoms, manifestations, and other characteristics that determine the proper level of disability, and the amount of compensation that will be provided therefor.[1] The Secretary has also adopted several regulations prescribing the policies and procedures for conducting VA medical examinations. *See, e.g.* 38 C.F.R. §§ 4.1, 4.2, 4.10, 4.85(a) (2007). These regulations, like those establishing the rating schedule, are listed in part 4 of title 38 of the Code of Federal Regulations. Most are listed in subpart A, "General Policy in Rating." However, at least one of these regulations, 38 C.F.R. § 4.85(a), is listed in subpart B, "Disability Ratings." The Secretary cited section 1155 as his authority for promulgating these regulations. *See* 38 C.F.R. §§ 4.1, 4.2, 4.10, 4.85(a).

"The Secretary's discretion over the [rating] schedule, including procedures followed and content selected, is insulated from judicial review with one recognized exception limited to constitutional challenges." *Wanner*, 370 F.3d at 1131. Although the Secretary believes otherwise, a regulation prescribing the policies and procedures for conducting a VA medical examination is not a part of the rating schedule or subject to the prohibition on judicial review. The rating schedule consists only of those regulations that establish disabilities and set forth the terms under which compensation shall be provided. 38 U.S.C. § 1155. A regulation prescribing the policies and

---

[1]According to VA, "[t]he rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service." 38 C.F.R. § 4.1 (2007). VA further recognizes that unlisted conditions may be granted service connection and assigned a hyphenated rating, i.e., one that uses the diagnostic code provision for an analogous disease or injury listed in the rating schedule. *See* 38 C.F.R. §§ 4.20 ("Analogous ratings"), 4.27 (2007) ("Use of diagnostic code numbers").

procedures for conducting a VA medical examination does not serve these purposes. Indeed, most of these regulations do not mention a particular disability at all. *See, e.g.*, 38 C.F.R. §§ 4.1, 4.2, 4.10. These regulations also do not set forth the terms under which disability compensation shall be provided. Those terms and conditions are listed elsewhere, i.e., in the diagnostic codes and rating tables applicable for a specific disease or injury.

Moreover, the VA General Counsel has opined that the mere placement of a regulation in part 4 of title 38 of the Code of Federal Regulations does not make the regulation a part of the rating schedule or subject to the prohibition on judicial review, and we agree. *See* VA Gen. Coun. Prec. 5-2002 (May 17, 2002) [hereinafter G.C. Prec. 5-2002] ("Placement of a regulation in Part 3 or Part 4 of the C.F.R. is not determinative of its susceptibility to judicial review."); *see also Sabonis v. Brown*, 6 Vet.App. 426, 429 (1994) (stating that the Court is not bound by a precedent opinion of the VA General Counsel). The Secretary's characterization of a particular regulation as part of the rating schedule does not do so either. *See Theiss v. Principi*, 18 Vet.App. 204, 213 (2004) (noting that a court need not accept the agency's characterization of a rule or regulation (citing *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003))). Again, the rating schedule consists only of those regulations which establish disabilities and set forth the terms under which compensation shall be provided. 38 U.S.C. § 1155. None of the specific regulatory provisions at issue here serve these purposes. *See* 38 C.F.R. §§ 4.1, 4.2, 4.10, 4.85(a).

More importantly, the Secretary's duty to perform medical examinations does not arise under the rating schedule statute, 38 U.S.C. § 1155. In *Green v. Derwinski*, we held that a regulation instructing the Board to return inadequate medical examinations, 38 C.F.R. § 4.2 (1989), was promulgated by the Secretary pursuant to his statutory "duty to assist a claimant under 38 U.S.C. § 3007(a) (1988)," and that the "fulfillment of th[is] statutory duty . . . includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." 1 Vet.App. 121, 123-24 (1991); *see also* 38 U.S.C. § 5103A(d). In other words, the Secretary's medical examination regulations are actually his construction of the "'gap left . . . by Congress'" in the duty-to-assist statute. *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984) (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)); *see* 38 U.S.C. § 501 (general rulemaking authority).

5

Moreover, Congress has deliberately chosen not to include the Secretary's duty to conduct medical examinations in the rating schedule statute. This omission suggests that judicial review of VA medical examination regulations is allowed, not that it is precluded. *See LeFevre v. Sec'y, Dep't of Veterans Affairs*, 66 F.3d 1191, 1198 (Fed. Cir. 1995) (acknowledging the "well-settled presumption that agency actions are reviewable"). Furthermore, our statutory obligations require that we ensure the integrity of the procedures used by the Secretary to gather the evidence necessary to substantiate a claim. *Jolley v. Derwinski*, 1 Vet.App. 37, 39-40 (1990) (holding that VA must follow its own procedural rules by assisting a claimant in obtaining newly discovered medical records). Our review of the Secretary's medical examination regulations is part of this obligation. For these reasons, we hold that a regulation prescribing the procedures for conducting a medical examination is not part of the rating schedule or subject to the prohibition on judicial review of the rating schedule by this Court.

In addition, even if the Secretary's medical examination regulations were part of the rating schedule, the prohibition on judicial review would not preclude the Court from deciding the questions presented. Congress has "only prohibit[ed] review of the substance of the Secretary's action with respect to the schedule of ratings." *Fugere v. Derwinski*, 972 F.2d 331, 335 (Fed. Cir. 1992); *see also* G.C. Prec. 5-2002 ("Generally, the prohibition on judicial review . . . refers only to the provisions that prescribe the average impairments of earning capacities, divided into ten grades of disability upon which payments of compensation are based, adopted and adjusted under 38 U.S.C. § 1155."). Therefore, the Secretary's interpretation of a regulation prescribing the content of the rating schedule can be reviewed. *See Smith,* 451 F.3d at 1347-48; *Sellers v. Principi*, 372 F.3d 1318, 1324 (Fed. Cir. 2004); *Mariano v. Principi*, 17 Vet.App. 305, 317-18 (2003). Indeed, the Secretary's interpretation of a regulation he administers–though entitled to substantial deference–is not beyond scrutiny. *See Smith*, 451 F.3d at 1349-50.

The appellant has challenged the Secretary's policy of conducting all audiometry testing in a sound-controlled room. He has not directly challenged the substance or content of any VA regulation, *compare Wanner*, *supra*, *with Sellers*, *supra*. Nor has he lodged a procedural challenge to any final rule or regulation prescribed by the Secretary. *See* 38 U.S.C. § 502; *Fugere* and *Theiss,* both *supra*. The prohibition on judicial review of the rating schedule would not preclude the Court from answering this question of regulatory interpretation even if the Secretary's medical examination

regulations were a part of the rating schedule. For these reasons, the Court holds that we have jurisdiction to consider the issues raised by the appellant here.

B. The Secretary's Policy for Conducting Audiological Examinations

The first issue is whether VA's policy of conducting audiometry testing in a sound-controlled room is a plainly erroneous interpretation of, or is otherwise inconsistent with, VA's regulations on medical examinations. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *Smith*, 451 F.3d at 1349, 1351. Congress has not prescribed the precise procedures for conducting VA medical examinations. *See* 38 U.S.C. § 5103A(d); *see also Chevron*, 467 U.S. at 842-43. The Secretary has exercised his broad authority to resolve this ambiguity by prescribing a series of regulations on this subject. *See* 38 U.S.C. § 501. One of these regulations provides, in relevant part, that "[a]n examination for hearing impairment for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test." 38 C.F.R. § 4.85(a). The Secretary has also provided his audiological examiners with additional guidance. *See* HANDBOOK OF STANDARD PROCEDURES AND BEST PRACTICES FOR AUDIOLOGY COMPENSATION AND PENSION EXAMINATIONS, sec. D, pts. 1, 17 (K.C. Dennis, ed. 2004) [hereinafter Handbook]. The Handbook states that "[a]ll threshold audiometric tests shall be performed in a sound-controlled room that meets *Booth Audiometric Examination Specifications* . . . for construction, fire protection, acoustic performance, and electromagnetic shielding and Maximum Permissible Noise Levels for Audiometric Rooms[.]" Handbook, sec. D, pts. 1, 17. This policy is apparently designed to ensure that all audiometric testing is performed in safe conditions and that the results provided are diagnostically and clinically sound. *See* VA CLINICIAN'S GUIDE, §§ 5.7-5.8 (Lewis R. Coulson, M.D., ed., 2002).

The appellant has not shown that the Secretary's policy is a plainly erroneous interpretation of § 4.85(a) or that it is otherwise inconsistent with VA's medical examination regulations. *See* 38 C.F.R. §§ 4.1, 4.2, 4.10. In particular, the appellant has offered no expert medical evidence demonstrating that an audiometry test conducted in a sound-controlled room produces inaccurate, misleading, or clinically unacceptable test results. Nor has the appellant offered any expert medical evidence demonstrating that an alternative testing method exists and that this method is in use by the general medical community. The appellant has simply offered his own unsubstantiated lay opinion as to the impropriety of this testing method. The Court will not invalidate the Secretary's

7

chosen policy on this basis. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494-95 (1992). Moreover, the Secretary's audiological examinations are designed for one purpose, i.e., to obtain the information necessary for the full and accurate application of the hearing loss rating schedule. 38 C.F.R. § 4.1. The Secretary has chosen to construct the hearing loss rating schedule based exclusively on the results provided from two objective tests, a pure tone audiometry test and a speech discrimination test. 38 C.F.R. § 4.85(a). We cannot second guess the Secretary's decision in this regard. Therefore, an appellant challenging the Secretary's policy concerning VA's audiological examination regulations would need to show that the policy is a plainly erroneous interpretation of, or is otherwise inconsistent with, VA's regulations. *See Smith*, *supra*. The appellant has not met this burden.

There is also no indication that VA has effectively amended § 4.85(a) by adopting the policy in the Handbook. *See United States v. Picciotto*, 875 F.2d 345 (D.C. Cir. 1989); *Theiss*, 18 Vet.App. at 213-214. This policy did not create "*new* substantive law." 18 Vet.App. at 214 (italics in original). It merely clarified the regulation by "provid[ing] concrete guidance as how" the regulation should "be applied in practice." *Stinson v. United States*, 508 U.S. 36, 44 (1993) (holding that the sentencing commission's commentary to the sentencing guidelines is treated as an agency's interpretation of its own legislative rule). Moreover, the Handbook "reflect[s] the agency's fair and considered judgment on the matter in question." *Auer v. Robbins*, 519 U.S. 452, 462 (1997). It was created prior to the pending litigation and the policy prescribed therein is consistent with the information provided in other guidance documents issued by the Secretary. *See* VA CLINICIAN'S GUIDE, *supra*. Thus, the Handbook is "in no sense a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack." *Auer*, 519 U.S. at 462 (quoting *Bowen v. Georgetown Univ.*, 488 U.S. 204, 212 (1988)). For these reasons, the Court upholds VA's policy of conducting audiometry testing in a sound-controlled room.

### C. The Adequacy of the Appellant's Audiological Examination

A VA medical examination must be "thorough . . . so that the evaluation of the claimed disability will be a fully informed one." *Green*, 1 Vet.App. at 124; *see* 38 C.F.R. §§ 4.1, 4.10. Moreover, "in addition to [furnishing] etiological, anatomical, pathological, laboratory and

prognostic data required for ordinary medical classification," a VA medical examination must also include a "full description of the effects of disability upon the person's ordinary activity." 38 C.F.R. § 4.10. In his brief, the Secretary argues that the mere inclusion of objective test results in an audiological examination report satisfies the former regulatory requirement because the administration of a speech recognition test during an audiological examination sufficiently accounts for the functional effects this disability has on a person's ordinary activities. 38 C.F.R. § 4.85(a). The Secretary also argues that the hearing loss rating schedule relies on the mechanical application of objective test results. Therefore, the inclusion of any additional description of the functional effects caused by a hearing disability can serve no purpose. The Secretary's arguments are unpersuasive.

A court may defer to an agency interpretation of a regulation even if proffered "in a litigating document." *Smith*, 451 F.3d at 1350. Moreover, an agency remains free to announce a new interpretation of a regulation without observing all of the formalities applicable to notice-and-comment rulemaking. *See Stinson*, 508 U.S. at 45-46 (citing the informal rulemaking procedures prescribed in 5 U.S.C. § 553). However, VA counsel's arguments on appeal are nothing more than his post hoc rationalizations of actions taken in the case. The Secretary, in an internal guidance document, recently reaffirmed the need for VA audiologists to describe the effect of a hearing disability on a claimant's occupational functioning and daily activities. Revised Disability Examination Worksheets, Fast Letter 07-10 (Dep't of Veterans Affairs Veterans Apr. 24, 2007) (on file with VA), *available at* http://www.tvc.state.tx.us/VA_Fast_Letters.htm (VA Benefits Administration communication to All VA Regional Offices and Centers instructing audiologists "to describe effects on occupational functioning and daily activities" in "both examination worksheets"). As this document indicates, the Secretary has rejected the policy urged by his counsel on appeal. Instead, he has adopted a different approach, one that presumably better serves the objectives of the relevant regulations. The policy of describing the results of all tests conducted makes sense, particularly in the context of the extraschedular rating provision. 38 C.F.R. § 3.321(b). Unlike the rating schedule for hearing loss, § 3.321(b) does not rely exclusively on objective test results to determine whether a referral for an extraschedular rating is warranted. The Secretary's policy facilitates such determinations by requiring VA audiologists to provide information in anticipation of its possible application. In any event, the position taken by counsel does not accurately represent

the Secretary's "fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462. Accordingly, the Court defers to the policy adopted by the Secretary in his previous guidance documents and holds that, in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report.

The Court holds that the VA audiologist provided such a description here. The audiologist's report notes that the appellant's bilateral hearing loss and tinnitus "[a]ffects [his] ability to sleep." R. at 351-53. This indicates that the examiner did elicit information from the appellant concerning the functional effects of his disability. That is all the applicable regulatory provisions require. *See* 38 C.F.R. §§ 4.1, 4.2, 4.10. The audiologist was not required to read the appellant's mind. *See Cintron v. West*, 13 Vet.App. 251, 259 (1999) (VA "ha[s] no obligation to read the mind of the veteran"). Nor was he required to offer a speculative opinion based on information that the appellant had not provided. *See Bloom v. West*, 12 Vet.App. 185, 187 (1999) (speculative medical opinion is inadequate for rating purposes). Moreover, even if the audiologist's description of the functional effects of his hearing disability was somehow defective, the appellant has not identified any evidence in the record indicating that a referral for an extraschedular rating is warranted. The appellant bears the burden of demonstrating on appeal any prejudice caused by a deficiency in an examination, and he has failed to do so in every respect here. *See Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (stating that the appellant must allege "with specificity any prejudice" that results from an alleged procedural error); *cf. Moore v. Nicholson*, 21 Vet.App. 211, 216-17 (2007) (concluding that the essential fairness of the adjudication was not affected by VA's failure to obtain service medical records). The Court, therefore, holds that the appellant's audiological examination was adequate for rating purposes.

The appellant's final argument is that the Board provided inadequate reasons or bases for assigning him a noncompensable disability rating and for not referring his claim for an extraschedular rating. Appellant's Br. at 24-30. The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). In its decision, the Board explained that as a matter of law

the appellant cannot receive a higher initial disability rating for his condition, because the hearing-loss rating schedule calls for the mechanical application of the test scores he received on his audiological examination. *See Lendenmann v. Principi*, 3 Vet.App. 345, 349 (1992). Moreover, the Board also explained that the appellant's disability picture was not so exceptional or unusual as to warrant a referral for an extraschedular rating. The Court holds that these statements were adequate and that there is no evidence in the record to question the basis for the Board's conclusion.

## III. CONCLUSION

Accordingly, the appellant's appeal of his bilateral tinnitus claim is DISMISSED. The Board's January 7, 2005, decision with respect to the appellant's COPD claim is VACATED and that matter is REMANDED for further adjudication. The Board's decision is otherwise AFFIRMED.