Citation Nr: 1443683 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 06-09 230 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to an initial evaluation in excess of 30 percent disabling for bilateral hearing loss for the period prior to March 14, 2013.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

A. Adamson, Counsel






INTRODUCTION

The Veteran had active service from February 1969 to August 1971. His decorations and awards include the Purple Heart Medal, the Air Medal, and the Combat Infantryman Badge.

This matter is before the Board from a January 2008 rating action which granted service connection for left ear hearing loss only, assigning an initial non-compensable evaluation effective from August 15, 2007. In a September 2008 rating action, an initial 30 percent evaluation was granted for bilateral hearing loss effective from August 15, 2007. In March 2013, the RO assigned a 40 percent rating, effective March 14, 2013. Because the increase in the evaluation of the Veteran's bilateral hearing loss disability does not represent the maximum rating available for the condition, the Veteran's claim remains in appellate status. See AB v. Brown, 6 Vet. App. 35 (1993).

This case was before the Board in October 2012 when it was remanded for further development. The requisite VA examination was conducted and a Supplemental Statement of the Case (SSOC) was issued in March 2013. There has been substantial compliance with the actions requested in the Board's Remand and the case has returned to the Board for appellate consideration. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (finding that only substantial compliance, rather than strict compliance, with the terms of a Board's remand directives is required). 

In October 2013, the Board denied the Veteran's claim for a higher initial rating for bilateral hearing loss. The Veteran appealed the decision to the Court of Appeals for Veterans Claims (Court). In July 2014, the Court issued an Order vacating the Board's October 2013 decision as to whether a rating in excess of 30 percent is warranted prior to March 14, 2013, and remanding the matter to the Board for action in accordance with a joint motion of the parties. The Court left the portion of the Board's decision determining that a rating in excess of 40 percent is not warranted from March 14, 2013, to the present undisturbed.

The record before the Board consists of the Veteran's paper claims files and electronic files known as Virtual VA and Veterans Benefits Management System.

As noted previously by the Board, the issue of entitlement to special monthly compensation has been raised by the record (August 2012 brief), but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). This issue remains unadjudicated. Therefore, the Board does not have jurisdiction over it, and it is again referred to the AOJ for appropriate action. 


FINDINGS OF FACT

1. The results of VA audiometric tests conducted in November 2007 show that the Veteran had level V hearing in his right ear and level VIII hearing in his left ear.

2. The results of VA audiometric tests of the left ear conducted November 17, 2012, were inadequate, however VA audiometric tests of the right ear on that date show that the Veteran had level V hearing loss in his right ear.

3. The results of VA audiometric tests conducted on March 14, 2013, within four months of the inadequate November 2012 examination, show that the Veteran had level IX hearing loss in his left ear.


CONCLUSIONS OF LAW

1. The criteria for an initial evaluation in excess of 30 percent for bilateral hearing loss for the period prior to November 17, 2012, have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.85, 4.86 Diagnostic Code 6100 (2013).

2. The criteria for an evaluation of 40 percent for bilateral hearing loss for the period from November 17, 2012, are met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.85, 4.86 Diagnostic Code 6100 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veteran's claim arises from his disagreement with the initial evaluation following the grant of service connection. Once service connection is granted, the claim is substantiated; additional notice is not required and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

VA also has a duty to assist the Veteran in substantiating his claim under 38 C.F.R. § 3.159(c), (d) (2013). Here, the Board finds that no prejudice to the Veteran will result from the adjudication of his claim at this time. All relevant evidence necessary for an equitable resolution of the issue on appeal has been identified and obtained, to the extent possible. The evidence of record includes VA outpatient treatment reports, VA examinations in November 2007, May 2012, November 2012, and March 2013, as well as statements from the Veteran and his representative. The adequacy of each of the VA examination reports is discussed in the decision, below. The record also includes a notation that the Veteran receives benefits from the Social Security Administration (SSA). An attempt was made to obtain relevant records from SSA; however a negative response was received from SSA in January 2006. Thus, further attempts to obtain these records would be futile making remand for this purpose unnecessary.

The Veteran has not indicated that he has any further evidence to submit to VA, or which VA needs to obtain. There is no indication that there exists any additional evidence that has a bearing on this case that has not been obtained. The Veteran and his representative have been accorded ample opportunity to present evidence and argument in support of his appeal. Thus, the Board finds that VA has obtained, and made reasonable efforts to obtain, all evidence that might be relevant to the issues decided, and that VA has satisfied the duty to assist. All pertinent due process requirements have been met. See 38 C.F.R. § 3.103 (2013). A remand for further development of this claim would serve no useful purpose. 

II. Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. 
§ 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1.

VA should interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability. 38 C.F.R. § 4.2. Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations apply, the higher of the two should be assigned where the disability picture more nearly approximates the criteria for the next higher rating. 38 C.F.R. § 4.7. When considering functional impairment caused by a service-connected disorder, evaluations should be based on an assessment of the lack of usefulness, and adjudicators should consider the effects of the disabilities upon the person's ordinary activity. 38 C.F.R. § 4.10. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath, 1 Vet. App. at 594. In Fenderson v. West, 12 Vet. App. 119 (1999), the Court noted an important distinction between an appeal involving a veteran's disagreement with the initial rating assigned at the time a disability is service connected. Where the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the effective date of the grant of service connection, and consideration of the appropriateness of "staged rating" (i.e., assignment of different ratings for distinct periods of time, based on the facts found) is required. See Fenderson, 12 Vet. App. at 126. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the Veteran. See 38 C.F.R. §§ 3.102, 4.3.

By way of the September 2008 rating decision, the RO granted the initial 30 percent evaluation for the bilateral hearing loss effective from August 15, 2007. In a March 2013 rating action, the RO assigned a 40 percent rating, effective March 14, 2013. Again, the rating from March 14, 2013, to the present is not under review at this time. 

The Veteran's hearing loss has been rated under 38 C.F.R. § 4.85, Diagnostic Code 6100. After a careful review of the Veteran's claims file, the Board finds that the preponderance of the evidence is against an initial rating in excess of 30 percent prior to November 17, 2012, for the Veteran's bilateral hearing loss, but that a 40 percent rating is warranted, effective November 17, 2012. 

The assignment of disability ratings for hearing impairment are derived by the mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345 (1992). The rating schedule provides a table (Table VI) for the purpose of determining a Roman numeral designation (I through XI) for hearing impairment, established by a state-licensed audiologist including a controlled speech discrimination test (Maryland CNC), and based upon a combination of the percent of speech discrimination and the pure tone threshold average, which is the sum of the pure tone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four. See 38 C.F.R. § 4.85. Table VII is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear. Impaired hearing is rated by measuring and averaging the volume at which a person can hear pure tones at several frequencies, called the pure tone threshold, and the person's ability to recognize a percentage of a specified list of words spoken in a prescribed way, called speech discrimination. The data is plotted on a table, and the result for each ear is plotted on another table to determine overall hearing impairment. Tables VI, VIA, and VII are provided for the Veteran's convenience.

Table VI
Numeric designation of hearing impairment based on pure tone threshold average and speech discrimination.

% of
discrim-
ination
Pure tone Threshold Average

0-41
42-49
50-57
58-65
66-73
74-81
82-89
90-97
98+
92-100
I
I
I
II
II
II
III
III
IV 
84-90
II
II
II
III
III
III
IV
IV
IV 
76-82
III
III
IV
IV
IV
V
V
V
V 
68-74
IV
IV
V
V
VI
VI
VII
VII
VII 
60-66
V
V
VI
VI
VII
VII
VIII
VIII
VIII 
52-58
VI
VI
VII
VII
VIII
VIII
VIII
VIII
IX 
44-50
VII
VII
VIII
VIII
VIII
IX
IX
IX
X 
36-42
VIII
VIII
VIII
IX
IX
IX
X
X
X 
0-34
IX
X
XI
XI
XI
XI
XI
XI
XI 

Table VIA*
Numeric designation of hearing impairment based only on pure tone threshold average.

Pure tone Threshold Average
0-41
42-48
49-55
56-62
63-69
70-76
77-83
84-90
91-97
98-104
105+
I
II
III
IV
V
VI
VII
VIII
IX
X
XI
*This table is for use only as specified in §§ 4.85 and 4.86


Table VII
Percentage evaluation for hearing impairment (diagnostic code 6100)
 
Poorer Ear
XI
100*
 
 
 
 
 
 
 
 
 
 
X
90
80
 
 
 
 
 
 
 
 
 
IX
80
70
60
 
 
 
 
 
 
 
 
VIII
70
60
50
50
 
 
 
 
 
 
 
VII
60
60
50
40
40
 
 
 
 
 
 
VI
50
50
40
40
30
30
 
 
 
 
 
V
40
40
40
30
30
20
20
 
 
 
 
IV
30
30
30
20
20
20
10
10
 
 
 
III
20
20
20
20
20
10
10
10
0
 
 
II
10
10
10
10
10
10
10
0
0
0
 
I
10
10
0
0
0
0
0
0
0
0
0 
 
XI
X
IX
VIII
VII
VI
V
IV
III
II
I

38 C.F.R. § 4.85.

Furthermore, additional considerations apply in cases of exceptional patterns of hearing impairment. Under the provisions of 38 C.F.R. § 4.86(a), when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. Each ear will be evaluated separately. Under 38 C.F.R. § 4.86(b), when the pure tone threshold is 30 decibels or less at 1,000 hertz, and 70 decibels or more at 2,000 hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results is the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be evaluated separately. 

Here, the evidence available for review as to the audiological findings related to the Veteran's hearing loss throughout the course of this appeal and for the year prior to his August 2007 claim includes November 2007, May 2012, November 2012, and March 2013 VA examination reports. The Board recognizes that the March 2013 VA examination report is not within the period analyzed in this decision; however, due to inadequacy in a portion of the November 2012 decision, the March 2013 VA examination report, in part, is considered in the decision below. The remaining evidence includes the December 2006 clinical notation showing initial complaints of hearing loss and a referral to the audiological clinic for consultation, as well as subsequent hearing aid consultations and fittings. Findings pertinent to the mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered, which is required to decide this claim, are found only in the VA examination reports.

In November 2007, the Veteran's pure tone thresholds, in decibels, as noted in the VA examination report, were as follows:



HERTZ



1000
2000
3000
4000
RIGHT
20
55
70
85
LEFT
35
85
100
115+

Again, pure tone threshold average, as used in Tables VI and VIA, is the sum of the pure tone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four. 38 C.F.R. § 4.85(d). In November 2007, therefore, pure tone threshold average on the right was 58, and on the left was 84. Speech audiometry revealed speech recognition ability of 68 percent in the right ear, and 56 percent in the left ear. The mechanical application of the above results compels a numeric designation of V in the right ear and VIII in the left ear under Table VI (38 C.F.R. § 4.85), and such a designation warrants a 30 percent rating under Table VII, which was assigned as the initial disability rating for the Veteran's hearing loss. 

The Veteran was again afforded VA examination in May 2012, however, his hearing acuity could not be tested at that time due to excessive cerumen in both ears. The examiner recommended an ear cleaning and reexamination.

In November 2012, the Veteran's was again afforded VA examination, which does include pure tone thresholds findings, as well as speech discrimination scores, as follows:



HERTZ



1000
2000
3000
4000
RIGHT
45
60
75
90
LEFT
65
60
90
105+

However, the November 2012 VA examiner indicated that the puretone threshold test results related to the left ear were not valid for rating purposes, because left tympanogram was "Type B, which is indicative of middle ear involvement." The examiner recommended that the Veteran see an ear, nose and throat specialist for examination. Moreover, the VA examiner noted that the use of the speech discrimination scores in this report is not appropriate for the Veteran because of language difficulties, cognitive problems, inconsistent speech discrimination, scores, etc., that make combined use of puretone average and speech discrimination scores inappropriate. This statement was not limited to the left ear, thus, the Board must presume that the use of speech discrimination scores from the November 2012 VA examination is inappropriate for either ear. Table VIa, "Numeric Designation Based Only on Puretone Threshold Average," is used to determinate a Roman numeral designation (I through XI) for hearing impairment based only on the puretone threshold average. 38 C.F.R. § 4.85(c). Table VIa will be used when the examiner certifies that the use of the speech discrimination test is not appropriate because of language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of § 4.86. Id. Thus, in this case, the November 2012 findings are wholly inadequate for rating purposes for the left ear, and with regard to the right ear, due to the findings related to the speech discrimination test, Table VIa is appropriate for use. Puretone threshold average in the right ear in November 2012 was 68. The mechanical application of these results compels a numeric designation of V in the right ear under Table VIa. 

Due to the inadequacy of the November 2012 findings related to the left ear, the parties to the joint motion suggest the use of the March 2013 findings for the left ear, in combination with the November 2012 findings related to the right ear in order to assess the severity of the Veteran's hearing loss disability in November 2012. The Board finds this to be a reasonable course of action, especially considering how close in time the November 2012 and March 2013 examinations took place.

The results of the March 2013 audiological testing were noted as valid for rating purposes. In March 2013, the Veteran's pure tone thresholds, in decibels, as noted in the VA examination report, were as follows:



HERTZ



1000
2000
3000
4000
RIGHT
55
75
80
85
LEFT
75
90
100
105+

In March 2013, therefore, pure tone threshold average on the left was 92. Speech audiometry revealed speech recognition ability of 44 percent in the left ear. The mechanical application of the above results compels a numeric designation of IX in the left ear under Table VI (38 C.F.R. § 4.85). The Board notes that 38 C.F.R. § 4.86(a) applies with regard to this evaluation, as puretone thresholds at each of the four specified frequencies is at 55 decibels or higher. However, the results do not change. Puretone threshold average of 92 on the left results in a numeric designation of IX in the left ear under Table VIA as well (38 C.F.R. § 4.85). 

The mechanical application of the results of the November 2012 VA examination as to the right ear (V), combined with the results of the March 2013 examination in the left ear (IX) warrants a 40 percent rating under Table VII. Thus, the Board finds that a 40 percent rating is appropriate as of November 17, 2012, utilizing both Table VI and Table VIA. There is no indication, however, that the 40 percent rating is warranted prior to the date of the November 2012 VA examination.

The Board recognizes that the May 2012 and November 2012 were not completely adequate for rating purposes. The May 2012 report was not used in this analysis, and the November 2012 report was utilized the extent that it was adequate, and was combined with the results of an examination report four months later in order to examine the claim in the light most favorable to the Veteran. As to the November 2007 and March 2013 examinations, they were adequate. VA regulation requires an examination including a controlled speech discrimination test (Maryland CNC), a pure tone audiometry test, and without the use of hearing aids. 38 C.F.R. § 4.85(a). These requirements are met in the November 2007 and March 2013 VA examinations utilized in this analysis. The Board again notes that this evaluation is purely according to a prescribed mechanical formula. In such a case, there can be no question as to whether hearing loss more nearly approximates the disability picture of the next higher rating. See 38 C.F.R. § 4.7. 

As noted above, a disability must be considered in the context of the whole recorded history. Consistent with the facts found, the ratings may be higher or lower for different segments of the time, i.e., the ratings may be "staged." Fenderson v. West, 12 Vet. App. 119 (1999). When examined as a whole, the medical evidence of record shows that the staged ratings presently assigned are in fact warranted in this case. There is, however, no evidence that staging the Veteran's bilateral hearing loss ratings beyond that assigned by way of this decision is warranted. 

Moreover, the Veteran's hearing loss does not warrant referral for extra-schedular consideration. In exceptional cases where schedular evaluations are found to be inadequate, consideration of an extra-schedular evaluation is made. 38 C.F.R. § 3.321(b)(1). There is a three-step analysis for determining whether an extra-schedular rating is appropriate. Thun v. Peake, 22 Vet. App. 111 (2008); aff'd Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). First, there must be a comparison between the level of severity and symptomatology of the service-connected disability and the criteria found in the rating schedule to determine whether the disability picture is adequately contemplated by the rating schedule. Id. If not, the second step is to determine whether the Veteran's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id.; see also 38 C.F.R. § 3.321(b)(1) (governing norms include marked interference with employment and frequent periods of hospitalization). If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id. The Board finds that no exceptional or unusual factors are in evidence, such as marked interference with employment or frequent periods of hospitalization that would warrant an extraschedular evaluation for the Veteran's bilateral hearing loss. Here, initially the Board notes that the Veteran is in receipt of a rating recognizing his unemployability to a certain date, followed by a schedular combined 100 percent disability rating through the present, which compensates him for the total impact of his service connected disabilities on his employment capabilities. Moreover, with regard to the bilateral hearing loss disability alone, the rating criteria contemplate his disability and are thus adequate to evaluate this claim, so referral is not warranted. 

In making this determination, the Board is cognizant of the holding of Martinak v. Nicholson, 21 Vet. App. 447 (2007). In that decision, the Court noted that unlike the rating schedule for hearing loss, the extraschedular provisions do not rely exclusively on objective test results to determine whether referral for an extra-schedular rating was warranted. The Court held that in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. Id. at 455. Here, the VA examination reports contain a detailed description of the Veteran's subjective complaints. The November 2007 examiner noted that the situation involving the greatest difficulty for the Veteran is conversation. The March 2013 examiner noted that the functional impact of the Veteran's bilateral hearing loss are mainly communication based. Comprehension of speech and resort to lip-reading was noted. The examiner also reported that the Veteran would have difficulty hearing on the phone, and the conversational difficulty would increase in noisy situations. Although the Board has considered this evidence in light of Martinak and the provisions of 38 C.F.R. § 3.321(b)(1), the Board does not find that the Veteran has described functional effects of bilateral hearing loss that are "exceptional" or not otherwise contemplated by the assigned evaluation. Rather, his description of difficulties with hearing is consistent with the degree of disability addressed the evaluations assigned.

Finally, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3844196 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, again, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), the Veteran is being compensated either at a 100 percent combined scheduler rating or with a TDIU throughout the course of this appeal. Thus, the combined effects of the Veteran's disabilities do not suggest an exceptional circumstance as described in Johnson. In sum, the Board finds that when the results of the adequate VA examinations are charted in Table VII (and VIIA as appropriate), the results falls within the criteria for a rating of no more than 30 percent disabling for the period prior to November 17, 2012, and no more than 40 percent thereafter. 


ORDER

An initial evaluation in excess of 30 percent disabling for bilateral hearing loss for the period prior to November 17, 2012, is denied. 

A 40 percent rating for bilateral hearing loss is granted, effective November 17, 2012, subject to the laws and regulations governing monetary awards.

____________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs