﻿Citation Nr: 18132489
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 16-07 517
DATE: September 6, 2018
ORDER
Entitlement to a compensable initial disability rating for bilateral sensorineural hearing loss is denied.
Entitlement to an initial disability rating of 50 percent, and no higher, for right wrist carpal tunnel syndrome (CTS) is granted.
FINDINGS OF FACT
1. The Veteran's hearing loss has been manifested by Level I hearing loss in his right ear and Level II hearing loss in his left ear.
2. The Veteran's right wrist CTS has been manifested by severe incomplete paralysis of the median nerve group in his right upper extremity.
CONCLUSIONS OF LAW
1. The criteria for a compensable initial disability rating for bilateral sensorineural hearing loss are not met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.85 (2017).
2. The criteria for a 50 percent initial disability rating for right wrist CTS are met. 38 U.S.C. §§ 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8515 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active duty from August 1969 through January 1972 and from July 1986 through March 2012.
Increased Ratings
Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities and are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017).
Where there is a question as to which of two ratings applies, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower disability rating will be assigned. 38 C.F.R. § 4.7 (2017).
In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of the veteran's disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). In instances where the disability rating being appealed is the initial disability rating assigned with an original grant of service connection, the entire appeal period must be considered. Different disability ratings may be assigned for separate periods of time depending on the facts shown in the evidence, a practice known as "staged ratings." See Fenderson v. West, 12 Vet. App. 119 (1999).
When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in the veteran's favor. 38 C.F.R. §§ 3.102, 4.3 (2017). Once the evidence is assembled, the Board is responsible for determining whether the preponderance of the evidence is against the claim. If so, the claim is denied; if the evidence is in support of the claim or is in equal balance, the claim is allowed. 38 U.S.C. § 5107 (2012); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).
1. Entitlement to a compensable initial disability rating for bilateral sensorineural hearing loss
Service connection for bilateral sensorineural hearing loss was granted for the Veteran, effective April 1, 2012, the first day of the first month after the Veteran was separated from active duty service. A non-compensable initial disability rating was assigned. The Veteran claims entitlement to a compensable initial disability rating. Notwithstanding the Veteran's contention, the criteria for a compensable initial disability rating for bilateral sensorineural hearing loss are not met.
In rating hearing loss disabilities, VA must first determine the Roman numerical designation for hearing impairment in each ear based upon a combination of the percent of speech discrimination and the pure tone threshold average. 38 C.F.R. § 4.85 (2017). In general, the Roman numerical designation is determined through application of 38 C.F.R. § 4.85 (h), Table VI (2017).
Under Table VI, the horizontal rows represent eight separate ranges of pure tone threshold averages, as demonstrated through audiometric testing for the frequencies at 1000, 2000, 3000, and 4000 Hertz. The average pure tone threshold is calculated by determining the sum of the pure tone thresholds demonstrated at the four aforementioned frequencies and dividing that sum by four. The vertical columns under Table VI represent nine separate ranges of speech discrimination percentage, as determined through Maryland CNC testing. The Roman numerical designation of impaired efficiency is determined for each ear by intersecting the horizontal row appropriate for the calculated pure tone threshold average and the vertical column appropriate for the demonstrated percentage of speech discrimination. For example, if audiometric testing shows an average pure tone threshold of 60 decibels in the right ear and Maryland CNC testing shows the percentage of discrimination of 70 percent in the right ear, the numeric designation level is "V" for the right ear. In the example, the same procedure would be followed to determine the Roman numerical designation for the left ear. 38 C.F.R. § 4.85 (b) (2017).
In instances where audiometric testing reveals an exceptional pattern of hearing impairment, Roman numerical designations may be determined under 38 C.F.R. § 4.85 (h), Table VIa. Pursuant to 38 C.F.R. § 4.86, an exceptional pattern of hearing impairment exists where audiometric testing reveals either: (1) pure tone thresholds of 55 decibels or more at each of the frequencies at 1000, 2000, 3000, and 4000 Hertz; or, (2) a pure tone threshold at 30 decibels or less at 1000 Hertz and 70 decibels or greater at 2000 Hertz. If an exceptional pattern of hearing impairment is shown, Table VIa permits VA to determine the Roman numerical designation of hearing impairment based solely on demonstrated pure tone threshold averages.
After the Roman numerical designation has been determined for each ear, VA then determines the appropriate disability rating through application of 38 C.F.R. § 4.85(h), Table VII (2016). Table VII is applied by intersecting the appropriate horizontal row (which represents the Roman numerical designation for the poorer ear) with the appropriate vertical column (which represents the Roman numerical designation for the better ear). For example, if the poorer ear has a Roman numerical designation of "VII" while the better ear has a numeric designation level of "V," the assigned disability rating is 30 percent. 38 C.F.R. § 4.85 (e) (2017).
During a November 2013 VA examination, the Veteran reported that he was experiencing difficulty understanding people when they were not facing him while they spoke. He reported also that he was having difficulty understanding speech while in the presence of background noise.
Audiometric tests revealed the following pure tones:

 HERTZ 
 1000 2000 3000 4000
RIGHT 25 30 60 40
LEFT 30 70 60 60

Based on the foregoing data, the averages for the Veteran's audiometric pure tones were 39 decibels in the Veteran's right ear and 55 decibels in the left ear. Speech recognition tests conducted via Maryland CNC word list revealed speech recognition abilities of 96 percent in the Veteran's right ear and 84 percent in his left ear.
Under Table VI, the pure tones and speech recognition abilities shown during the November 2013 examination correspond to Level I hearing loss in the Veteran's right ear and Level II hearing loss in his right ear. Application of Table VII to the foregoing levels of hearing loss corresponds to a non-compensable initial disability rating.
In a December 2013 statement, the Veteran continued to describe difficulty understanding people at work and that he had been wearing hearing aids since March 2013.
The Board is sympathetic to the Veteran's complaints and in no way discounts the day to day difficulties that the Veteran experiences because of his hearing loss. However, as explained above, the assignment of disability ratings for hearing loss is derived primarily by the mechanical process explained and applied above. Hence, the Board must predicate its determination on the basis of the results of the audiology studies of record. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). In this case, the "mechanical application" of the diagnostic criteria to the evidence establishes that the Veteran is not entitled to a compensable disability rating for hearing loss.
In Martinak v. Nicholson, 21 Vet. App. 447, 453-4 (2007), the United States Court of Appeals for Veterans Claims (Court) held that a VA audiologist must fully describe the functional effects caused by a hearing disability in the final report of the examination to facilitate determinations regarding extra-schedular consideration. The Court noted that, unlike the rating schedule for hearing loss disability, 38 C.F.R. § 3.321 (b) does not rely exclusively on objective test results to determine whether an extra-schedular rating is warranted. See Martinak, 21 Vet. App. at 455.
Here, the VA examiner noted the Veteran's reported difficulty in understanding speech and opined that the Veteran's overall functioning is impaired to that degree. Overall, the findings and opinions reported by the VA examiner provide a sufficient description of the functional effects associated with the Veteran's hearing loss. As such, the examiner's expressed findings and opinions are sufficient to allow the Board to consider whether referral for an extra-schedular disability rating is appropriate under 38 C.F.R. § 3.321 (b).
In Thun v. Peake, 22 Vet. App. 111 (2008), the United States Court of Appeals for Veterans Claims (Court) established a three-step inquiry for determining whether an extra-schedular rating under 38 C.F.R. 3.321 is warranted by the evidence. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for that service-connected disability are inadequate. Second, if the schedular rating does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation Service to determine whether, in order to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating.
With respect to bilateral hearing loss, the decibel loss and speech discrimination ranges designated for each level of hearing impairment in Tables VI and VIA were chosen in relation to clinical findings of the impairment experienced by veterans with certain degrees and types of hearing disability. In support of this finding, the Board points to the regulatory history of 38 C.F.R. §§ 4.85 and 4.86. In this regard, the rating criteria for hearing loss were last revised, effective June 10, 1999. See 64 Fed. Reg. 25206 (May 11, 1999). In forming these revisions, VA sought the assistance of the Veteran's Health Administration (VHA) to develop criteria that contemplate situations in which a Veteran's hearing loss was of such a type that speech discrimination tests may not reflect the severity of communicative functioning these veterans experienced or that was otherwise an extreme handicap in the presence of any environmental noise, even with the use of hearing aids. VHA had found through clinical studies of veterans with hearing loss that, when certain patterns of impairment are present, a speech discrimination test conducted in a quiet room with amplification of the sounds does not always reflect the extent of impairment experienced in the ordinary environment. The decibel threshold requirements for application of Table VIA were based on the findings and recommendations of VHA. The intended effect of the revision was to fairly and accurately assess the hearing disabilities of veterans as reflected in a real life industrial setting. 59 Fed. Reg. 17295 (April 12, 1994). Accordingly, the Board finds that functional impairment due to hearing loss that is compounded by background or environmental noise is a disability picture that is considered in the current schedular rating criteria. Therefore, any difficulty to comprehend verbal conversations is a factor contemplated in the regulations and rating criteria as defined. Accordingly, to the extent that the Veteran describes hearing loss, the Board finds that the Veteran's complaints are considered fully under the numerical criteria set forth in the rating schedule.
The Board notes also that this conclusion is consistent with the Court's holding in Doucette v. Shulkin, 28 Vet. App. 366 (2017) ("[W]hen a claimant's hearing loss results in an inability to hear or understand speech or to hear other sounds in various contexts, those effects are contemplated by the schedular rating criteria"). The record on appeal contains no evidence of other symptoms attributable to the service-connected bilateral hearing loss and not contemplated by the rating criteria.
Because the rating criteria reasonably describe the Veteran's disability level and symptomatology, his disability picture is contemplated by the Rating Schedule, such that the assigned schedular noncompensable evaluation is, therefore, adequate, and referral for extra-schedular consideration is not required. Thun, 22 Vet. App. at 115-116; VAOPGCPREC 6-96. The evidence does not show anything unique or unusual about the Veteran's hearing loss that would render the schedular criteria inadequate.
The Veteran is not entitled to a compensable initial disability rating for bilateral sensorineural hearing loss.
2. Entitlement to an initial disability rating higher than 10 percent for right wrist CTS. 
Service connection for right wrist CTS was also granted for the Veteran, effective April 1, 2012. A 10 percent initial disability rating was assigned pursuant to the rating criteria under 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8515. The Veteran asserts entitlement to a higher initial disability rating.
DC 8515 provides the criteria for rating disabilities due to paralysis of the median nerve group. Those criteria provide different rating schedules depending on whether the disability in question involves the major or minor upper extremity. Here, the Veteran has reported during VA examinations that he is right hand dominant.
For disabilities involving the dominant arm, DC 8515 provides for a 10 percent disability rating where the evidence shows mild incomplete paralysis of the median nerve. A 30 percent disability rating is assigned where there has been moderate incomplete paralysis of the median nerve. A 50 percent disability rating is warranted where there has been severe incomplete paralysis of the median nerve. A 70 percent disability rating is assigned for disabilities marked by complete paralysis of the median nerve; the hand inclined to the ulnar side, the index and middle fingers more extended than normally, considerable atrophy of the muscles of the thenar eminence, the thumb in the plane of the hand (ape hand); pronation incomplete and defective, absence of flexion of the index finger, cannot make a fist, index and middle fingers remain extended; cannot flex distal phalanx of the thumb; defective opposition and abduction of the thumb, at right angles to the palm; flexion of wrist weakened; pain with trophic disturbances.
Records from private treatment received by the Veteran with Dr. G.B.W. show that the Veteran was treated in December 2012 for complaints of pain, tingling, and prickling in his right upper extremity. Nerve conduction studies revealed findings that were determined as being consistent with severe to moderately severe CTS and mild cubital tunnel syndrome.
The records show that the Veteran underwent surgery at Jackson Madison County General Hospital in January 2013 to remove retained hardware that was placed in his right wrist during in-service surgery. An examination conducted prior to the surgery revealed the presence of a ganglion cyst in the Veteran's right wrist. The surgery was performed, however, the hardware in the Veteran's wrist could not be removed. Still, the treating physician performed a carpal tunnel release and debrided the ganglion cyst and a partial tear of the flexor tendon.
Post-surgical follow-up treatment records from Dr. G.B.W. through March 2013 note ongoing complaints of right wrist pain, swelling, and numbness. A physical examination conducted in March 2013 revealed decreased sensation in the Veteran's right upper extremity in a median nerve distribution. A neurological examination conducted also that month at EMG Clinics of Tennessee revealed decreased motor strength to 4-/5 in the Veteran's right first finger. Sensation was also decreased in all of the fingers in the Veteran's right hand. A repeat nerve conduction study again revealed findings that were consistent with moderately severe to severe right median neuropathy.
During a December 2013 VA examination, the Veteran reported that he had been experiencing worsened pain and numbness in his right hand and wrist since the January 2013 surgery. On examination, the Veteran demonstrated decreased muscle strength to 4/5 during right wrist flexion and while pinching the thumb and index finger in his right hand. Sensation in the right forearm, hand, and fingers was decreased. March 2013 nerve conduction studies were reviewed and noted for showing a moderately severe to severe right median neuropathy at the right wrist. In terms of function, the examiner noted that the Veteran had difficulty turning pages of his bible while preaching and that he had difficulty with woodworking. The examiner diagnosed carpal tunnel syndrome that was characterized by moderate pain, paresthesias, and numbness but did not delineate the nerve groups that were affected and the extent of the paralysis to the nerve group.
Records for subsequent VA treatment received by the Veteran reflect no information that suggests a change in the symptoms or impairment associated with the Veteran's right CTS. Of note, an April 2015 VA treatment record states that the Veteran was reporting that he had been working at renovating a lake house all winter, which seems to suggest that the Veteran retained good overall function.
In a December 2015 medical opinion, a reviewing clinician opined that there is no relationship between the Veteran's CTS and cubital tunnel syndrome. To that end, the examiner noted that the two conditions are separate and distinct and involve different areas of the upper extremities.
Overall, the treatment records show that the Veteran's right CTS has been manifested during the appeal period by pain, numbness, and tingling in his right wrist, hand, and fingers. Repeated private nerve conduction studies have revealed findings that are consistent with moderately severe to severe paralysis of the median nerve group in the Veteran's right (major) upper extremity. In view of the same, the criteria for a 50 percent initial disability rating pursuant to DC 8515 are met.
Subject to the above, the criteria for a 70 percent disability rating under DC 8515 are not met. In that regard, the evidence does not show that the Veteran's right CTS has resulted in complete paralysis of the median nerve, and indeed, the evidence does not indicate the symptoms and manifestations listed under the criteria for a 70 percent disability rating.
(Continued on the next page)
 
The Veteran is entitled to a 50 percent initial disability rating, and no higher, for right wrist CTS.
 
DONNIE R. HACHEY
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD D.S. Lee, Counsel