﻿Citation Nr: AXXXXXXXX
Decision Date: 01/22/19 Archive Date: 01/22/19

DOCKET NO. 180919-394
DATE: January 22, 2019

ORDER

Entitlement to an initial compensable evaluation for bilateral hearing loss prior to March 27, 2017, and in excess of a 20 percent evaluation from that date is denied.

Entitlement to service connection for malaria is denied.

REMANDED

Entitlement to service connection for a left foot condition, to include as due to fungus, is remanded.

Entitlement to service connection for a right foot condition, to include as due to fungus, is remanded.

Entitlement to service connection for severe headaches is remanded.

FINDINGS OF FACT

1. Prior to March 27, 2017, the audiometric findings showed that the Veteran had no more than Level I hearing acuity in the right ear and Level I hearing acuity in the left ear. 

2. From March 27, 2017, the audiometric findings have shown the Veteran to have no more than Level V hearing acuity in the right ear and Level V hearing acuity in the left ear; he has not had an exceptional pattern of hearing loss at any time.

3. The preponderance of the evidence of record is against finding that the Veteran has had residuals from his history of malaria at any time during or approximate to the pendency of the claim. 

CONCLUSIONS OF LAW

1. The criteria for an initial compensable evaluation for bilateral hearing loss prior to March 27, 2017, and in excess of a 20 percent evaluation from that date have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.85, 4.86, Diagnostic Code (DC) 6100.

2. The criteria for service connection for malaria are not met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from November 1967 to August 1969. The Veteran selected the higher level review lane when he submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record prior to issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested evidence submission. Therefore, the Board has considered the evidence submitted within 90 days of the RAMP rating decision.

Also as an initial matter, the Board notes the Veteran filed a claim for service connection for malaria and severe headaches in September 2011, both of which were denied in a September 2013 rating decision. Thereafter, instead of filing a notice of disagreement with the September 2013 rating decision, the Veteran filed new claims. Because new and material evidence was received prior to the expiration of the appeal period of the September 2013, the new claims are considered as having been filed in connection with the claim which was pending at the beginning of the appeal period and the claims do not need to be reopened. 38 C.F.R. § 3.156(b). Further, the Agency of Original Jurisdiction (AOJ) considered the merits of the service connection claims for malaria and severe headaches in its August 2018 RAMP rating decision. 38 U.S.C. § 7104(a).

Finally, as a general matter, the Board has reviewed all of the evidence in the Veteran’s claims file, with an emphasis on the evidence relevant to these appeals. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate and the Board’s analysis below will focus specifically on what the evidence shows, or fails to show, as to the claims. 

1. Entitlement to an initial compensable evaluation for bilateral hearing loss prior to March 27, 2017, and an evaluation in excess of 20 percent from that date is denied. 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1151; 38 C.F.R. § 4.1. 

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. All benefit of the doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3. 

At the time of an initial rating, separate ratings can be assigned for separate periods of time based on the facts found-a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999). The United States Court of Veterans Claims (Court) has held that “staged” ratings are appropriate for an increased rating claim where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran’s hearing loss disability is rated noncompensable prior to March 27, 2017, and 20 percent from March 27, 2017 under 38 C.F.R. § 4.86, DC 6100. 

The assignment of disability ratings for impairment of hearing acuity is derived by the mechanical application of the Rating Schedule to the numeric designations assigned, after audiometric evaluations are rendered. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

The Rating Schedule provides a table for rating purposes (Table VI) to determine a Roman numeral designation (at Levels I through XI) for hearing impairment. Table VII is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment in both ears. See 38 C.F.R. § 4.85.

VA rating criteria for evaluating hearing loss disability provide ratings from 0 (noncompensable) to 100 percent, based on the results of controlled speech discrimination tests together with the results of pure tone audiometry tests. 38 C.F.R. §§ 4.85, 4.86, DC 6100. “Pure tone threshold average,” as used in Table VI, is the sum of the pure tone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four. Average pure tone decibel loss is located on Table VI along a horizontal axis, and percent of speech discrimination is located along a vertical axis. These axes intersect to determine the Roman numeral designation for hearing impairment in each ear. The results are then matched between the “better” ear and the “poorer” ear on Table VII to produce a disability rating under DC 6100.

When the puretone threshold at each of the four specified frequencies (1,000, 2,000, 3,000 and 4,000 Hertz ) is 55 decibels or more, Table VI or Table VIa is to be used, whichever results in the higher numeral. 38 C.F.R. § 4.86 (a). Additionally, when the puretone threshold is 30 decibels or less at 1,000 Hertz, and 70 decibels or more at 2,000 Hertz, Table VI or Table VIa is to be used, whichever results in the higher numeral. Thereafter, that numeral will be elevated to the next higher numeral. 38 C.F.R. § 4.86 (b).

An examination for hearing impairment for VA purposes must be conducted by a state licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a pure tone audiometry test. Examinations will be conducted without hearing aids. 38 C.F.R. § 4.85(a).

In Martinak v. Nicholson, 21 Vet. App. 447 (2007), the Court held that in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. Martinak, 21 Vet. App. at 455. The Court also noted, however, that even if an audiologist’s description of the functional effects of a veteran’s hearing disability was somehow defective, the veteran bears the burden of demonstrating any prejudice caused by a deficiency in the examination. Id. 

A VA audiological examination was performed in November 2013. The examination revealed puretone thresholds in the right ear, in decibels, at 1000, 2000, 3000, and 4000 Hz as follows: 15, 25, 60, 80, for an average of 45; and puretone thresholds for the left ear, in decibels, at 1000, 2000, 3000, and 4000 Hz as follows: 15, 20, 80, 85, for an average of 50. The speech recognition scores, using the Maryland CNC Test, were 96 percent in the right ear and 96 percent in the left ear.

Another VA audiological examination was performed in March 2017. The examination revealed puretone thresholds in the right ear, in decibels, at 1000, 2000, 3000, and 4000 Hz as follows: 20, 40, 65, 85, for an average of 52.5; and puretone thresholds for the left ear, in decibels, at 1000, 2000, 3000, and 4000 Hz as follows: 20, 30, 85, 90, for an average of 56.25. The speech recognition scores, using the Maryland CNC Test, were 68 percent in the right ear and 68 percent in the left ear.

The Veteran’s treatment records show gradual and progressive bilateral decrease in hearing with his primary complaints of difficulties with hearing conversations with his wife at home and at work. See CAPRI.

Evaluating the VA audiological test results cited above, the Board finds that when the pure tone threshold averages and the speech recognition scores for the right ear from the VA examination in 2013 are applied to Table VI, the numeric designation of hearing impairment is Level I. When the pure tone threshold averages and speech recognition scores for the left ear are applied to Table VI, the numeric designation of impairment is Level I. When these numeric designations for the right and left ears from the VA examination are applied to Table VII (Percentage Evaluation for Hearing Impairment-DC 6100), the percentage of disability for hearing impairment is 0 percent, and a compensable rating is therefore not warranted prior to March 27, 2017. See 38 C.F.R. § 4.85, DC 6100.

Similarly, when the pure tone threshold averages and the speech recognition scores for the right ear from the VA examination in 2017 are applied to Table VI, the numeric designation of hearing impairment is Level V. When the pure tone threshold averages and speech recognition scores for the left ear are applied to Table VI, the numeric designation of impairment is Level V. When these numeric designations for the right and left ears from the VA examination are applied to Table VII (Percentage Evaluation for Hearing Impairment-DC 6100), the percentage of disability for hearing impairment is 20 percent, and a rating higher than 20 percent is therefore not warranted from March 27, 2017. See 38 C.F.R. § 4.85, DC 6100.

Notably, the provisions of 38 C.F.R. § 4.86 which address exceptional patterns of hearing loss are not applicable. There is no showing that Veteran had an exceptional pattern of hearing loss at any time.

In addition, the Board notes that the 2013 and 2017 VA examiners discussed the functional effects caused by the Veteran’s hearing disability in their reports; these included difficulties understanding speech both on the phone and in conversations and difficulty hearing co-workers and supervisors at work. These difficulties caused the Veteran to miss some work assignments and caused embarrassment. See Martinak, supra.

Consideration is given to the Veteran’s statements regarding the effects of his hearing loss. He is competent and credible in this regard. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) and 38 C.F.R. § 3.159(a)(2). However, as a layperson, without the appropriate medical training and expertise, he is not competent to provide a probative (persuasive) opinion on a medical matter, especially the severity of his hearing loss disability in terms of the applicable rating criteria. Furthermore, the functional difficulties he reported to the VA examiners relate to his hearing loss disability, which is accounted for in the schedular rating criteria. As noted above, the evaluation of hearing loss is reached by a mechanical application of the rating schedule, to the numeric designations assigned, after audiometric evaluations are rendered. See Lendenmann, supra. The requirements of 38 C.F.R. § 4.85 set out the percentage ratings for exact numerical levels of impairment required for a compensable evaluation of hearing loss, which requires specific testing. 

In reviewing the record, the Board finds that the Veteran’s degree of bilateral hearing loss disability has not met the standards for a compensable evaluation prior to March 27, 2017 and thereafter, his hearing warranted a 20 percent disability rating but not higher. See Fenderson, supra. The preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the claim for an initial compensable rating for bilateral hearing loss disability prior to March 27, 2017 and in excess of 20 percent thereafter must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

2. Entitlement to service connection for malaria is denied.

The Veteran contends he suffers from residuals of malaria following his history of suffering from malaria in service. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that the Veteran does not have a current diagnosis of residuals of his history of malaria and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

The Veteran’s service treatment records (STRs) clearly show that malaria was diagnosed in service and received treatment for it. See STR. However, his treatment records following his service do not show that he has continued to have recurring malaria or that he has been treated for residuals from his history of malaria. In so finding, the Board notes the Veteran also has not identified any such residuals in the lay contentions of record, apart from headaches, for which he has filed a separate claim for service connection and is addressed below. 

While the Veteran may believe he has a current diagnosis of residuals from his history malaria, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education/knowledge of the interaction between multiple organ systems in the body/the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence.

REASONS FOR REMAND

1. Service connection for a bilateral foot condition, to include as due to fungus, is remanded.

Both the Veteran and his wife report that the skin on his feet have never been normal following his service. He has suffered from recurrent skin conditions on both feet that involve cracking, swelling, bleeding and scaling. See statement and see NOD. Further, the Veteran reported that he was treated for a similar condition while in Vietnam due to recurrent submersion of his feet in water. See statement. 

A review of the Veteran’s VA treatment records reflects that in January 2014, a Skin Diseases Disability Benefits Questionnaire was completed by a clinic nurse practitioner at the Veteran’s behest. No opinion was provided, as it was not a VA examination. However, given the contentions by the Veteran that he experienced skin problems with his feet in service and has continued to do so subsequent to service, the Board finds that prior to the rating decision on appeal, he should have been provided a VA examination to determine whether he has a current skin disability of the bilateral feet that is related to his service in Vietnam.

2. Service connection for severe headaches is remanded.

The Veteran contends he suffers from severe headaches following contracting malaria in service. Specifically, he reported that his headaches have never stopped and occur almost daily with varied strength and duration. See statement and See NOD. The Veteran’s wife echoes the Veteran’s contentions regarding his severe headaches following his military service. See statement.

In March 2017, a VA examiner opined the Veteran’s headaches were less likely than not incurred in or caused by malaria during the Veteran’s military service. In support of that opinion, the examiner gave great weight ot the fact the Veteran’s induction and separation examinations indicated no headaches in conjunction with the fact the Veteran’s records showed the first diagnosis of headaches in 2011. However, the examiner did not address the lay statements of chronic headaches following the Veteran’s service throughout the record. See examination.

In light of the inadequate VA examination that was obtained prior to the rating decision on appeal, another VA examination is necessary to address the Veteran’s continued complaints of headaches following his in-service malaria diagnosis. 

The matters are REMANDED for the following actions:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any bilateral foot condition to include as due to fungus. The examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease, including caused by his submersion of feet in the water in Vietnam (and “paddy feet” or “trench feet”). 

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any severe headaches. The examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease, including caused by his in-service diagnosis and treatment of malaria 

 

A. ISHIZAWAR

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD K. Churchwell, Counsel