Citation Nr: 21050003
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 17-08 129
DATE: August 13, 2021

ORDER

Service connection for right ear hearing loss is denied. 

Service connection for a right middle finger disability is denied. 

A compensable rating for left ear hearing loss is denied. 

A compensable rating for kidney stones is denied.

A compensable rating for a heart disability is denied. 

FINDINGS OF FACT

1. The objective medical evidence of record shows that the Veteran does not have a right ear hearing loss for VA purposes.

2. The objective medical evidence of record shows that the Veteran does not have a right middle finger disability.

3. The Veteran has, at its highest degree of severity, Level IV hearing acuity in his service-connected left ear.

4. The Veteran has not experienced kidney stones or episodes of nephrolithiasis during the appeal period.

5. Throughout the period on appeal, the Veteran's atrial fibrillation did not cause permanent atrial fibrillation (lone atrial fibrillation), or one to four episodes per year of paroxysmal atrial fibrillation or other supraventricular tachycardia documented by ECG or Holter monitor.

CONCLUSIONS OF LAW

1. The criteria for service connection for right ear hearing loss have not been met. 38 U.S.C. §§ 1110, 5103A, 5107; 38 C.F.R. §§ 3.303, 3.385.

2. The criteria for service connection for a right middle finger disability have not been met. 38 U.S.C. §§ 1110, 5103A, 5107; 38 C.F.R. § 3.303.

3. The criteria for a compensable rating for left ear hearing loss disability have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.102, 3.159, 3.321(b)(1), 4.85, 4.86, Diagnostic Code (DC) 6100.

4. The criteria for a compensable rating for kidney stones have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.115b, DC 7508.

5. The criteria for a compensable rating for a heart disability have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.104, DC 7010.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from February 2010 to June 2013.

These matters were most recently before the Board in July 2019. At that time, the Board remanded the appeal to have the Agency of Original Jurisdiction (AOJ), in part, schedule the Veteran for VA examinations to determine the current (then) severity of left ear hearing loss and heart and kidney stone disabilities. VA examined the Veteran in March 2020 (hearing loss) and June 2020 (heart and kidney disabilities). See March 2020 Hearing Loss and Tinnitus and June 2020 Heart and Kidney Disability Benefit Questionnaires (DBQs). Thus, the requested development has been accomplished and these matters have returned for further appellate consideration. 

The matters of entitlement to service connection for right and left knee, and low back disabilities were also before the Board in July 2019. By an October 2020 rating action, the RO granted service connection for these disabilities; initial disability ratings of 10 percent were assigned, each effective from June 9, 2013. By a December 2020 rating action, the RO assigned a 20 percent rating to the service-connected low back disability, effective November 25, 2020. This represents a complete grant of his appeal in regard to these claims. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997). Thus, these issues are no longer before the Board for appellate consideration.

Service Connection

The Veteran seeks service connection for right ear hearing loss and right middle finger disability. After a brief discussion of the laws governing service connection, the Board will address the merits of each claim. 

"Service connection" means that a Veteran has a disability resulting from a disease or injury that began in or was aggravated by active service. 38 C.F.R. § 3.303. To establish direct service connection, there must be evidence of (1) a present disability, (2) an in-service incurrence or aggravation of an injury or disease, and (3) a causal link ("nexus") between the in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

In Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018), the Federal Circuit held that "'disability' in § 1110 refers to the functional impairment of earning capacity" and "pain in the absence of a presently-diagnosed condition can cause functional impairment," en route to its conclusion that "pain alone, without an accompanying diagnosis of a present disease, can qualify as a disability." 886 F.3d at 1363, 1368, 1369. However, it also made clear that a veteran cannot "demonstrate service connection simply by asserting subjective pain to establish a disability, the veteran's pain must amount to a functional impairment. To establish the presence of a disability, a veteran will need to show that her pain reaches the level of a functional impairment of earning capacity." Id. at 1367-68.

Service connection for right ear hearing loss is denied.

The Veteran contends that he currently has hearing loss in his right ear as a result of his military service. 

The Board will deny the claim for service connection for right ear hearing loss because the weight of the evidence does not show that he currently has this disability or at any time during the appeal period.

For VA purposes, hearing loss will be considered to be a disability when (1) the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or (2) the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or (3) when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R.§ 3.385.

VA regulations do not require hearing loss for VA purposes to be present during service. Rather, hearing loss, if sensorineural in nature, is a "chronic disease" listed under 38 C.F.R. § 3.309 (a); therefore, 38 C.F.R. § 3.303 (b) applies. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease shown in service or within the presumptive period, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes.

The Veteran's DD 214 reflects that his military occupational specialty was an Infantryman. Thus, the Board recognizes the Veteran's military noise exposure. However, military noise exposure alone is not considered to be a disability, rather, it must be shown that the military noise exposure caused hearing loss for VA purposes. 

In this case, the Veteran does not have a current diagnosis of right ear hearing loss by VA standards and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Here, VA audiological examinations, performed in January 2015 and March 2020, do not show that auditory thresholds in the right ear in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz were 40 decibels or greater; or for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz were 26 decibels or greater; or speech recognition scores using the Maryland CNC Test were less than 94 percent (speech recognition scores in the right ear were 96 percent). 38 C.F.R.§ 3.385.

While the Veteran is competent to report hearing difficulties, he is not competent to diagnose right ear hearing loss, including by VA standards or otherwise. Such a diagnosis requires specialized knowledge of audiograms and an ability to interpret all pertinent responses. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). As the evidence does not include a competent diagnosis of right ear hearing loss, the criteria for entitlement to service connection for right ear hearing loss are not met.

Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in a disability. 38 U.S.C. § 1110. In this case, the competent evidence establishes that the Veteran does not have a hearing loss disability in his right ear as defined by VA regulations. Therefore, service connection for is denied. Brammer v. Derwinski, 3 Vet. App. 223 (1992). Thus, the Board must deny the Veteran's claim.

Service Connection for a right middle finger disability is denied.

The Veteran seeks service connection for a right middle finger disability. 

In reviewing the record, the Board will deny the claim because the weight of the evidence does not show that the Veteran has had a right middle finger disability at any time during the appeal period.

Service treatment records (STRs) reflect that the Veteran was seen for swelling of the proximal interphalangeal joint of the right middle finger in August, September, and October 2012. In September 2012, the Veteran indicated that the swelling had been present for one (1) year and that it was not incited by any injury. X-rays at that time showed swelling without any arthritic changes. The Veteran was diagnosed as having swollen of the fingers. 

Post-service evidence includes a March 2015 VA examination report. The VA examiner determined, after an essentially normal examination of the right hand, fingers, and thumb, that there was no objective evidence of any right middle finger condition. The Veteran denied any history of a hand condition. There was no evidence of any limitation of motion, painful motion, functional loss, or functional impairment of the right hand or fingers. Again, a clinical diagnosis was not offered for the right middle finger. 

VA and private treatment records do not disclose any clinical diagnosis referable to the right middle finger. 

In reviewing the record, the Board will deny the claim because the weight of the evidence does not show that the Veteran has had a right middle finger disability at any time during the appeal period. The Board notes that the Veteran believes that he has a right middle finger condition that is related to his service. However, a medical opinion on a clinical diagnosis and the issue of causation of such a medical condition is a determination made outside the realm of common knowledge of any lay person. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Therefore, the Veteran's lay statements are inadequate to establish the required nexus and the Board must rely on the objective medical evidence of record, which does not show a current disability. 

Moreover, even if a disability were found based on pain amounting to functional limitation in the right middle fingers, the evidence of record in this case does not suggest that such impairment was the result of the Veteran's military service.

Thus, the Board must deny the Veteran's claim.

 

Increased Rating Claims

The Veteran seeks compensable ratings for his service-connected left ear hearing loss, kidney stones and heart disability. After a brief discussion of the laws and regulations governing increased rating claims, the Board will adjudicate the merits of claim separately in the analysis below.

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321, 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

A compensable rating for left ear hearing loss is denied. 

Under the applicable criteria, ratings for hearing loss are determined in accordance with the findings obtained on audiometric evaluations. Ratings for hearing impairment range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests, together with the average hearing threshold level as measured by pure tone audiometry tests in the frequencies 1,000, 2,000, 3,000, and 4,000 cycles per second. To evaluate the degree of disability from hearing impairment, the rating schedule establishes eleven auditory acuity levels designated from Level I for essentially normal acuity through Level XI for profound deafness. 38 C.F.R. § 4.85, Diagnostic Code 6100. 

If, as here, impaired hearing is service-connected in only one ear, in order to determine the percentage evaluation from Table VII, the non-service connected ear will be assigned a Roman Numeral designation for hearing impairment of I. See 38 C.F.R. § 4.85 (f).

Hearing tests will be conducted without hearing aids, and the results of above-described testing are charted on Table VI and Table VII. See 38 C.F.R. § 4.85 .

Exceptional patterns of hearing impairment are evaluated under 38 C.F.R. § 4.86 .

(a) When the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear will be evaluated separately.

(b) When the pure tone threshold is 30 decibels or less at 1000 hertz, and 70 decibels or more at 2000 hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be evaluated separately.

As noted above, under VA rating criteria, an adequate evaluation of impairment of hearing acuity rests upon the results of controlled speech discrimination tests, together with tests of the average hearing threshold levels at certain specified frequencies. See 38 C.F.R. § 4.85, Diagnostic Code 6100.

Pertinent case law provides that the assignment of disability ratings for hearing impairment is to be derived by the mechanical application of the Ratings Schedule to the numeric designations assigned after audiometry evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345 (1992).

The Board finds that the weight of the evidence of record is against the claim for an initial compensable rating for the Veteran's left ear hearing loss. 

The Veteran contends that his left hearing loss is more severe than that reflected in the currently assigned noncompensable disability rating.

Here, pertinent evidence includes January 2015 audiological evaluation. On audiometric testing, pure tone thresholds, in decibels, and speech recognition scores were reported as follows:

 HERTZ CNC

 1000 2000 3000 4000 Avg %

RIGHT 

LEFT 25 15 25 40 26 96

Here, the Veteran's average decibel loss and speech recognition scores in his left ear equate, using Table VI, to a Level I at the January 2015 audiological examination, and when combined with a Level I from his right ear on Table VII, is insufficient to warrant a compensable rating.

Finally, the pertinent evidence includes a March 2020 audiological evaluation. On audiometric testing, pure tone thresholds, in decibels, and speech recognition scores were reported as follows:

 HERTZ CNC

 1000 2000 3000 4000 Avg %

RIGHT 

LEFT 35 30 30 40 34 72

Here, the Veteran's average decibel loss and speech recognition scores in his left ear equate, using Table VI, to a Level IV at the March 2020 audiological examination, and when combined with a Level I from his right ear on Table VII, is insufficient to warrant a compensable rating.

The March 2020 VA examiner also noted that the Veteran's left ear hearing loss did not impact the Veteran's ordinary conditions of life, to include his ability to work. See March 2020 VA Hearing Loss and Tinnitus Disability Benefits Questionnaire (DBQ) at page (pg.) 4)). See Martinak v. Nicholson, 21 Vet. App. 447 (2007). 

In addition, as none of the above-cited VA audiological evaluations reflect that the Veteran had 55 decibels or more in all pure tone thresholds of the left ear from 1000-4000 Hertz, or 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz, exceptional hearing impairment has not been demonstrated in the left ear during any of these evaluations and, thus, 38 C.F.R. § 4.86 is not for application in the appeal.

As discussed, a compensable rating is not warranted for the Veteran's left ear hearing loss and the claim is denied.

A compensable rating for kidney stones is denied. 

The Veteran seeks a compensable rating for his service-connected kidney stones.

The Veteran's kidney stones are currently rated as noncompensable under 38 C.F.R. § 4.115b, Diagnostic Code 7508, specifically applicable to nephrolithiasis (i.e., kidney stones). Under Diagnostic Code 7508, nephrolithiasis is rated as hydronephrosis except when there are recurring stone formations that require one or more of the following: (1) diet therapy, (2) drug therapy, and/or (3) invasive or non-invasive procedures more than two times a year; in which case a 30 percent evaluation will be assigned. 38 C.F.R. § 4.115b , Diagnostic Code 7508. 

Under Diagnostic Code 7509, specifically applicable to hydronephrosis, a 10 percent rating is warranted for only an occasional attack of colic, not infected and not requiring catheter drainage; a 20 percent rating is warranted for frequent attacks of colic, requiring catheter drainage; and a maximum 30 percent rating is warranted for frequent attacks of colic with infection (pyonephrosis) with impaired kidney function. If hydronephrosis is severe, it is rated as renal dysfunction. 38 C.F.R. § 4.115b , Diagnostic Code 7509. 

The Veteran filed his claim for entitlement to service connection for kidney stones in January 2014. In a July 2015 rating decision, the RO granted service connection for kidney stones with a noncompensable rating effective June 9, 2013, the date following the Veteran's discharge from active service. 

A review of the VA treatment records and examination reports, dated in March 2015 and June 2020, do not show that the Veteran has had a recurrence of kidney stones and colic at any time during the appeal period. A March 2015 VA examiner noted that a 2010 computerized tomography (CT) scan revealed nephrolithiasis, but that there had been no recurrence since that time. Further a June 2020 laboratory studies revealed normal range of creatinine. Based on the foregoing, the March 2015 and June 2020 examiners determined that the Veteran had not had any recurrence of his kidney stones. 

The records show that the Veteran has not taken diet therapy or medication for kidney stones or had any renal dysfunction during the appeal period. Consequently, a compensable rating is not warranted under Diagnostic Codes 7508 or 7509 for the Veteran's kidney stone disability. 

In sum, the Board finds that the preponderance of the evidence is against a compensable rating for kidney stones at any time during the appeal period.

A compensable rating for a heart disability is denied. 

The Veteran seeks a compensable rating for his service-connected heart disability. 

The record reflects that the Veteran's service-connected supraventricular arrhythmia has been rated under Diagnostic Code 7010, which provides for a 10 percent rating for supraventricular arrhythmia manifested by permanent atrial fibrillation (lone atrial fibrillation), or 1 to 4 episodes per year of paroxysmal atrial fibrillation, or other supraventricular tachycardia documented by ECG or Holter monitor. A maximum 30 percent rating is assigned for supraventricular arrhythmia manifested by paroxysmal atrial fibrillation or other supraventricular tachycardia, with more than 4 episodes per year documented by ECG or Holter monitor. 38 C.F.R. § 4.104, DC 7010.

Pursuant to Diagnostic Code 7011, a 10 percent rating is assigned for a workload of greater than 7 METs but not greater than 10 METs, which results in dyspnea, fatigue, angina, dizziness, or syncope, or continuous medication required. A 30 percent rating is assigned when a workload of 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or there is evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. A 60 percent rating is assigned when there is more than one episode of congestive heart failure in the past year, or a workload of 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or there is left ventricular dysfunction with an ejection fraction of 30 to 50 percent. A 100 percent rating is assigned for chronic congestive heart failure; or workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of less than 30 percent. 38 C.F.R. § 4.104 , DC 7011.

Based on the above, the Board finds that the weight of the evidence is against a compensable rating for his supraventricular arrhythmia. Here, VA examinations, performed in March 2015 and June 2020, as well as VA treatment records, do not show supraventricular arrhythmia manifested by permanent atrial fibrillation (lone atrial fibrillation), or 1 to 4 episodes per year of paroxysmal atrial fibrillation, or other supraventricular tachycardia documented by ECG or Holter monitor, or a workload of greater than 7 METs but not greater than 10 METs, which results in dyspnea, fatigue, angina, dizziness, or syncope, or continuous medication required. Notably, at the March 2015 examination, the examiner noted that the Veteran had not experienced any episodes of supraventricular arrhythmia in the previous 12 months. In addition, at that examination, the Veteran denied having experienced any symptoms with any level of activity METS, such as angina, fatigue, or dyspnea. While the Veteran was noted to have had a workload of greater than 7 not greater than 10 METs at the June 2020 VA examination, he was not found to have any associated symptoms. In addition, at both examinations the Veteran's heart disability was not found to have necessitated continuous medication. Accordingly, the preponderance of the evidence is against a compensable rating for the Veteran's heart disability, and the claim is denied.

 

 

L. Chu

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Carole Kammel, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.